(23 Misc. Rep. 197.)

### BARNES et al. v. ARNOLD et al.

(Supreme Court, Equity Term, Niagara County. March, 1898.)

1. INSOLVENT CORPORATION—ACTION AGAINST STOCKHOLDERS.
   Gen. Laws, c. 36, § 55, provides that no action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon returned unsatisfied. *Held*, that the insolvency of a bank, the appointment of a receiver, judgment of dissolution and forfeiture, and the issuance of an injunction restraining its creditors from bringing any action against it, dispense with the statutory conditions precedent to bringing suit against the stockholder.

2. SAME—SUIT IN EQUITY.
   A suit in equity may be maintained by the creditors of an insolvent bank against the stockholders, to enforce their statutory liability, without waiting until the receiver has converted and applied all the assets, or alleging that a deficit will remain after all the assets are applied to the payment of debts.

3. BANK INSOLVENCY—LIABILITY OF STOCKHOLDERS.
   Gen. Laws, c. 37, § 52, provides that the stockholders of every banking corporation shall be individually responsible for all debts of such corporation, to the extent of the amount of their stock, at its par value, in addition to the amount invested in such shares. *Held*, that section 52 applies to stockholders of banks organized before that section took effect, as to debts incurred after that section took effect.

4. SAME—MODIFICATION OF CHARTER.
   The charter of a bank incorporated under a general law may be modified or repealed by the legislature.

5. SAME—LIABILITY OF STOCKHOLDERS.
   Where a state constitution prescribes the liability of stockholders in banks of issue, the legislature may extend such liability to other banks.

6. CORPORATIONS—STOCKHOLDERS' LIABILITY.
   Statutes imposing an individual liability on stockholders for corporate debts are to be strictly construed in favor of the stockholders.

7. BANKS—DEPOSITS.
   Gen. Laws, c. 36, § 55, provides that "no stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted." *Held*, that deposits in a bank, subject to check, become due when the bank suspends payment, whether the interest is paid on balance or not, and bringing suit against the receiver and the stockholders constitutes a demand.

8. SAME—INSOLVENCY—DEMAND.
   Presentation of certificates of deposit payable on return of certificates and demand is dispensed with by the failure of the bank, and the bringing of an action against the receiver of the bank and its stockholders is a sufficient demand.

9. SAME—DEBTS.
   Drafts drawn by a bank on other banks in payment of borrowed money become liabilities of the drawing bank as soon as they are protested.

**10. SAME—PAYMENT OF DEPOSITS.**

In determining whether deposits made in a bank before the date when a stockholders' liability law took effect are still unpaid, payments by the bank will be applied first to the earliest items of indebtedness.

**11. SAME—INTEREST ON STOCK LIABILITY.**

Gen. Laws, c. 37, § 52, provides that the stockholders of every banking corporation shall be individually responsible for all debts of such corporation, to the extent of the amount of their stock, at its par value, in addition to the amount invested in such shares. *Held*, that interest begins to run on the amount due from the stockholders of an insolvent bank at the date of the commencement of an action against them.

**12. SAME.**

Interest on claims of creditors of an insolvent bank begins to run when the bank suspends payment, but not as against the stockholders, in excess of their total liability.

Action by Charles A. Barnes and others against John J. Arnold and others to enforce the statutory liability of the stockholders of a corporation.

Millar & Moyer, for plaintiffs Barnes and others.

Charles M. Southworth, for city of Lockport.

Charles Hickey, for Hart and others.

Joshua Gaskell (Richard Crowley, of counsel), for Noble and others.

Ellsworth, Potter & Storrs, for Atwater and others.

John E. & G. W. Pound, for Hall and others.

E. C. Hart, for Stevens and others.

W. H. & F. A. Ransom, for Trevor and others.

Frank M. Loomis, for Tillinghast.

Butler, Mynderse, Joline & Notman, for trustee Notman.

Roberts, Becker, Ashley, Messer & Orcutt, for Helmer.

Hubbell & McGuire, for New York Baptist Union.

S. Wallace Dempsey, for Bowen.

LAUGHLIN, J. The plaintiffs are creditors of the Merchants' Bank of Lockport, and bring this action to enforce the statutory liability of the stockholders thereof. On the 12th day of December, 1863, the First National Bank of Lockport was incorporated, pursuant to the acts of congress, as a national bank; and on February 24, 1883, its corporate existence was duly extended 20 years by the comptroller of the currency. The latter part of February, 1890, it was duly dissolved, for the purpose of becoming a state bank. On the 1st day of March, 1890, the necessary steps required by chapter 409 of the Laws of 1882 having been taken, it was duly converted into a state bank, under the name of Merchants' Bank of Lockport. On that day the state superintendent of banking issued to it a certificate showing due compliance with the law, and authorizing its continuance as a state bank for the period of 25 years from that date. On the 6th day of October, 1893, the Merchants' Bank closed its doors, suspended business, and the superintendent of banking took charge thereof. On the 13th day of the same month an action was instituted in this court by the people, through the attorney general, for the dissolution of the bank, on the ground of its insolvency; and three days later a temporary receiver was appointed, who thereupon qualified, and took possession of the property of the bank. At

the same time the payment of moneys by the bank was enjoined, as was also the bringing of actions against it. Thereafter such proceedings were duly had in said action that on the 26th day of December, 1893, final judgment was granted dissolving said corporation; forfeiting its corporate rights, privileges, and franchises; directing the distribution of its property among its creditors; and perpetually enjoining and restraining the creditors from instituting any action against it; and the receivership was made permanent. The liabilities of the bank when the receiver took possession, as shown by its books, aggregated $191,789.27. The receiver, under the direction of the court, paid preferred claims amounting to $20,865.29. He also paid to the general creditors one dividend of 30 per cent. in September, 1894, and another dividend of 10 per cent. in April, 1895. The capital stock of the Merchants' Bank was $100,000. This action was commenced March 1, 1895, at which time, and at the time of the trial and final submission of the case, more than four years after the bank failed, the creditors' claims unpaid exceeded the amount of the capital stock. The receiver has on hand a large amount of unconverted assets, consisting of claims in litigation, and checks and notes, which he has strenuously endeavored to collect, but without success. He has refrained from bringing actions thereon, believing that the expenses would equal or exceed the collections. It is not probable that more than $20,300, which is the receiver's valuation, will be realized on all of such remaining assets. In addition to these, the receiver holds some vacant lands and equities in real estate in different parts of the country. The receiver testifies that the bank's interest therein is not worth to exceed $13,500. At the present time there is no demand or market for such lands or equities. A forced public sale of such remaining assets now would not, in his opinion, be for the best interests of the creditors or stockholders. I think that such a sale would result in a sacrifice of the assets, whereas, if such assets are held by the receiver, there is a probability that he will realize his valuation thereon. The action is brought for the benefit of all other creditors, as well as for the plaintiffs, and the receiver is made a party defendant.

The statute on which the liability of the stockholders depends is section 52 of the banking law (chapter 37, Gen. Laws, being chapter 689 of the Laws of 1892), which provides as follows:

"Except as prescribed in the stock corporation law, the stockholders of every such corporation [referring to banking corporations], shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

In Hirshfeld v. Bopp, 145 N. Y. 84, 39 N. E. 817, it was held that the only provisions of the stock corporation law, here referred to, are those contained in section 55, c. 36, Gen. Laws, being chapter 688 of the Laws of 1892, which is as follows:

"No action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part, and the amount due on such execution shall be the amount recoverable, with

costs against the stockholder. No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against a stockholder after he shall have ceased to be a stockholder, for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder."

No previous action was brought against the corporation by any of its creditors, and no judgment was obtained or execution issued or returned unsatisfied in whole or in part on any of the existing claims. The stockholders' first contention is that these requirements of the statute are conditions precedent, and that, on account of the omission to comply therewith, this action cannot be maintained. The complaint alleges, and the plaintiffs have proved, the insolvency of the bank, the appointment of a receiver, and the judgment of dissolution and forfeiture, enjoining the bringing of actions against it, as rendering the statutory conditions precedent impossible of performance, and dispensing therewith. According to the fundamental principles of law and justice, and well-established precedents, these facts excuse and dispense with performance of such statutory conditions precedent. Shellington v. Howland, 53 N. Y. 375; Kincaid v. Dwinelle, 59 N. Y. 548; Hunting v. Blun, 143 N. Y. 511, 38 N. E. 716; Hirshfeld v. Bopp, 145 N. Y. 84, 39 N. E. 817; Sickles v. Herold, 149 N. Y. 334, 43 N. E. 852.

The next point presented by the stockholders is that this action cannot be maintained until the receiver has converted and applied all of the assets. The complaint contains no allegation that, after all of the assets are appropriated to the payment of the bank's debts, there will remain a deficit equal to the total amount of the capital stock. It is evident, from the proofs presented, that the deficit will nearly equal the capital stock; but a definite finding to that effect would not be warranted, and is not made. In this respect the question presented is without precedent. There are cases holding that such an action will lie before the assets have been fully converted, but in those cases it was alleged that the ultimate deficiency would be so great that the whole amount for which the stockholders were liable would be required to pay the creditors. Hirshfeld v. Kursheedt, 81 Hun, 555, 30 N. Y. Supp. 1023; Id., 145 N. Y. 84, 39 N. E. 817; Hagmayer v. Farley, 23 App. Div. 432, 48 N. Y. Supp. 336. The first law imposing any individual liability on stockholders in banks was section 7 of article 8 of the constitution of 1846, which reads as follows:

"The stockholders in every corporation and joint-stock associations for banking purposes, issuing bank notes or any kind of paper credits to circulate as money, after the 1st day of January, 1850, shall be individually responsible to the amount of their respective shares of stock in any such corporation or association, for all its debts and liabilities of every kind contracted after said 1st day of January, 1850."

The earliest enactment of the legislature on the subject was chapter 226 of the Laws of 1849, which declared the liability contained in the constitution, and provided for enforcing the same. In and by its provisions the receiver of an insolvent bank was required to

declare a dividend for the benefit of the creditors within 90 days after his appointment. The court was authorized to extend such period 90 days. Within 30 days after declaring such dividend, it was the duty of the receiver to report to the court a list of the stockholders, to the end that a reference might be directed to apportion their liability for the remaining debts of the bank; and it was expressly provided that such apportionment should not be delayed, by order of the court or otherwise, for more than one year. The same provision, in substance, was retained in the revision of the banking laws (chapter 409 of the Laws of 1882), all of which was repealed by section 215 of the act of 1892, from which I have quoted. In the revision of 1892 the provision authorizing the receiver to enforce the liability of the stockholders was not retained. The statutory revision commissioners, who prepared the new banking law, had previously recommended to the legislature, in the proposed receiver's law, which was not enacted, provisions similar to those theretofore existing. 1 Rep. Com'rs Statutory Rev. 1890, pp. 1299–1324, and especially page 1316; Hirshfeld v. Bopp, 145 N. Y. 92, 39 N. E. 817. Under the act of 1849 it was held that the assets of the bank should be deemed the primary fund for the payment of its debts, but that the creditors should not be delayed beyond the period of six months for the purpose of converting the assets, and that proceedings against the stockholders should be instituted at the expiration of that period. The rule adopted was that the receiver should, as far as practicable, realize on the assets by collections and sale, and, if there was good reason for postponing the sale of any of the assets beyond six months, the court would make an order accordingly, and that after converting all assets not in litigation, or obtaining an order extending his time so to do, the receiver should proceed against the stockholders for the deficiency then existing. In such cases the stockholders, and not the creditors, were required to look for reimbursement from the unconverted assets. In re Reciprocity Bank, 17 How. Prac. 323; Id., 22 N. Y. 9; In re Hollister Bank, 23 N. Y. 508. It does not follow that this rule should be adopted in an action brought by creditors, who have no control over the assets or over the receiver. The receiver being an officer of the court, the creditors may fairly assume that he is disposing of the assets with all reasonable dispatch, consistent with the rights of the parties interested, and that, so far as the assets are at present convertible, they have been converted. After waiting for upwards of four years, I think the creditors are not required, before proceeding against the stockholders, to apply to the court for a forced sale of the remaining assets, during a period of great business depression throughout the country. The plaintiffs obtained the consent of the court to bring this action against its receiver, and that was all that could reasonably be required of them. The stockholders, who have the greatest interest in the unconverted assets, should give this matter their attention; and had they at any time united in requesting the court to direct the receiver to sell such assets at public auction or otherwise, so that the exact amount of the deficit would be known, I have no doubt such direction would have been promptly given.

The stockholders still have ample time for such an application be-
fore the hearing on the reference, which will be ordered to appor-
tion their liability, is terminated, or before final judgment after the
referee's report.   If the stockholders do not apply for such a sale
and conversion of the remaining assets, I see no impropriety or in-
justice in proceeding with the apportionment of their liability, ac-
cording to the deficit as it now exists, the same as if the court had
ordered the postponement of the sale of the remaining assets before
the commencement of this action.   This objection on the part of
the stockholders is purely technical, and interposed, not for the pur-
pose of having their liability reduced by a present application of such
remaining assets, but for the purpose of entirely defeating this
action, and postponing their liability indefinitely, if not enabling
them to avoid liability under the statute of limitations.   The pay-
ment of the claims of the creditors should not be longer delayed,
and the stockholders should be required to pay in and contribute
to the present deficit, or the deficit existing at the time of final
judgment, so far as they are liable on their respective holdings of
stock.   The receiver should be directed to return to the stockhold-
ers, in proportion to the amount paid by them, respectively, any
moneys subsequently realized on the undisposed of assets not re
quired to pay the debts of the bank, or the expenses of the receiver-
ship.   The statute relieves the stockholders of liability unless the
action is brought against the corporation within two years from
the time the debt becomes due, and also within two years from the
time they ceased to be stockholders.   While in this case the action
is not brought against the corporation, yet, all claims against the
corporation having fallen due upon its becoming insolvent, it would
not be an unreasonable construction of the statute to hold that the
two-years statute of limitations applies to such an action as this.
The preservation of the rights of the creditors against the stockhold-
ers requires that they be permitted to maintain this action before
the expiration of two years from the time the bank closed its doors,
regardless of the question as to whether the assets have or have not
all been converted into cash.   It being a suit in equity, the court
is clothed with full power to so mold the relief, on application for
final judgment, as to protect the stockholders from being compelled
to pay over more money than may be necessary.   Peck v. Goodber-
lett, 109 N. Y. 189, 16 N. E. 350; Walton v. Coe, 110 N. Y. 109, 17 N.
E. 676; Hirshfeld v. Bopp, 145 N. Y. 96, 39 N. E. 817.

   The stockholders contend that they are not subject to the liability
imposed by the banking law of 1892.   The Merchants' Bank never
issued bank notes, or any kind of paper credits to circulate as money,
and only carried on an ordinary discount and deposit business.   At
the time it became a state bank, there was no law rendering stock-
holders of such a bank, which did not issue bank notes, or any kind
of paper credits to circulate as money, liable to the creditors of the
bank.   There never had been such a law in this state, and was not
thereafter, until the enactment of section 52 of the banking law
of 1892, hereinbefore quoted, which took effect on the 17th day of
June, 1892.   Sections 1 and 2 of the banking law expressly provide

that it shall be applicable to all moneyed corporations authorized by law to issue bills, notes, or other evidences of debt, for circulation as money, or to receive deposits of money and commercial paper, and to make loans thereon, and to discount bills, notes, or other commercial paper; and section 216 thereof in terms repeals all existing banking laws, so far as any question here involved is concerned, leaving no other statute by which the affairs of existing banks were to be conducted, or could be regulated and supervised. The reasonable construction of the act of 1892, taken as a whole, shows a legislative intent that it should apply to all then existing banks, and not alone to those thereafter incorporated. The legislature had authority to repeal all existing bank charters, and it had authority to modify and amend existing bank franchises so that the same, if exercised in the future, would be exercised subject to such restrictions as the legislature saw fit to impose for the protection of the public, and of the creditors of the corporation. In re Oliver Lee & Co.'s Bank, 21 N. Y. 19; Sinking-Fund Cases, 99 U. S. 700; Sleeper v. Goodwin, 67 Wis. 577, 31 N. W. 335.

The fact that the Merchants' Bank was incorporated by filing a certificate under a general law did not deprive the legislature of its authority to modify or repeal the charter. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692.

In the early days, nearly all of the state banks were banks of issue, so that the liability of stockholders to creditors imposed by the constitution of 1846 and the act of 1849 extended to almost all state banks. By section 5151 of the United States Revised Statutes, all stockholders in national banks have at all times been liable to the creditors, to the extent imposed by section 52 of the banking law of 1892, and the latter section was adopted from the former. Later on, when state banks, owing to the discriminating federal tax, ceased to issue circulating notes, their stockholders ceased to be liable to the creditors. This situation was not foreseen when the constitution of 1846 was adopted, and the law of 1849 was enacted to carry the same into effect. The stockholders elected their officers and agents to represent them in the management of the bank; and they could fully protect their interests by selecting competent, honest men, and requiring their officers to give bonds, and by investigating the affairs of the bank from time to time. The depositors had no protection, beyond the competency and honesty of those in charge of the bank, and had no opportunity of knowing how the affairs of the bank were managed, except as reported by the banking department, whose examiners were often deceived and misled by the agents and representatives of the stockholders who were conducting the business. The statutory revision commissioners in 1897 recommended to the legislature that the stockholders in all banking institutions of the state be subjected to the same liability, and that such liability be made the same as under the federal law. If such extended liability of stockholders was only made applicable to new banks, it is evident that the new banks would, on account of the additional security to depositors, command most of the business, and that the old banks would have been forced to wind up their affairs at a sacrifice, and re-

incorporate, for self-preservation. This course was entirely unnecessary if it was within the power of the legislature to extend this additional liability to stockholders of existing banks. Upon similar considerations, the court held that the additional liability imposed upon stockholders by the constitution of 1846 and the act of 1849 applied to all banks previously formed under the general law and under special charters. In re Oliver Lee & Co.'s Bank, 21·N. Y. 9; In re Reciprocity Bank, 22 N. Y. 9. Public policy required that greater protection be given to bank depositors, as further appears by the amendment adopted in 1894 to section 7 of article 8 of the constitution, by which it is provided that stockholders of every banking corporation "shall be individually responsible to the amount of their respective share or shares of stock   *   *   *   for all its debts and liabilities of every kind."

In the case at bar, I think the intention of the legislature that the law of 1892 should apply to existing state banks, is clear. The important question presented is, does it, as thus construed, impair the obligation of existing contracts, and thus conflict with the fundamental law of the land? Such a construction should not be given if it would render the law unconstitutional. Long prior to the adoption of the constitution of 1846, the Revised Statutes contained the following provision, which has remained therein ever since, namely: "The charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal, in the discretion of the legislature." 1 Rev. St. p. 600, § 8. The first general act for the incorporation of banks (chapter 260, Laws 1838) contained a similar provision. Section 1 of article 8 of the constitution of 1846, after providing for laws regulating the formation of corporations, contained the following, which has remained in the constitution to the present day: "All general laws and special acts passed pursuant to this section may be altered from time to time or repealed." Section 2 of the same article of the constitution provided, and still provides, as follows: "Dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law." In view of this reserve power to alter, amend, or repeal charters of corporations, and of the express constitutional mandate, requiring the legislature to enact laws securing the debts due to creditors of corporations, by the individual liability of the stockholders, it was unquestionably within the power of the legislature to increase the liability of stockholders of existing corporations as to debts subsequently contracted. If the stockholders did not wish to incur such increased liability, they should have discontinued operations as a corporation; and, having continued business under the new law, they will be deemed to have accepted and acquiesced in the new liability imposed. If the majority of the stockholders favored continuing business, and debts were subsequently contracted, against the wishes of the minority, that is one of the conditions and contingencies subject to which they accepted and held their stock. In re Oliver Lee & Co.'s Bank, 21 N. Y. 19; Sinking-Fund Cases, 99 U. S. 700; Sleeper v. Goodwin, 67 Wis. 577, 31 N. W. 335; Attorney General v. Railroad Cos., 35 Wis.

429, affirmed (Peik v. Chicago & N. W. Ry. Co.) 94 U. S. 164; Dam Co. v. Gray, 30 Me. 547-551; Weidenger v. Spruance, 101 Ill. 278.

The plaintiffs claim that the stockholders are liable, under the banking law of 1892, to those who were depositors and holders of certificates of deposit on June 17th, when that law took effect. I think such a construction of the law would render it unconstitutional. The liability of stockholders to the creditors of a corporation is contractual, not penal. Cochran v. Wiechers, 119 N. Y. 399, 23 N. E. 803; Corning v. McCullough, 1 N. Y. 47; Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263; Wiles v. Suydam, 64 N. Y. 173. Those who contract with corporations contract with reference to the liability of stockholders as then prescribed by law. Such liability becomes part of the contract with the creditors. After the liability has accrued, the legislature cannot release the stockholders therefrom. Close v. Noye, 4 Misc. Rep. 616, 26 N. Y. Supp. 93. The corporation is the principal debtor, and the stockholder's individual liability is that of a surety. Such statutes should be construed strictly in favor of the stockholder. Chase v. Lord, 77 N. Y. 1; Gray v. Coffin, 9 Cush. 199.

It has been seen that the stockholders were not liable to the creditors of the bank prior to the 17th day of June, 1892. Those who were depositors and holders of certificates of deposit prior to that day did not become such on the faith and credit of the stockholders. The policy of the state has been to encourage the formation of corporations. Stock incorporations would be of very uncertain value, and an unsafe investment, if it should be held that the legislature may at any time enact laws rendering the stockholders liable for the debts of the corporation, where no such liability existed when the debts were contracted. There is therefore no reason or propriety in applying to the banking law of 1892, which imposes a personal liability upon the stockholders, a retroactive effect, which, if not rendering it unconstitutional, would make its validity exceedingly doubtful. The well-established rule of construction in such cases should be followed, giving the language of the act prospective operation only. In re Oliver Lee & Co.'s Bank, 21 N. Y. 20; Hirshfeld v. Kursheedt, 81 Hun, 560, 30 N. Y. Supp. 1023; Statutory Construction Law (Laws 1892, c. 677, § 31); Wheeler v. Bank, 23 Me. 310; Com. v. Cochituate Bank, 3 Allen, 42; Ireland v. Turnpike Co., 19 Ohio, 372, 373; People v. O'Brien, 111 N. Y. 60, 18 N. E. 692; Weidenger v. Spruance, 101 Ill. 278.

There is no force in the contention of counsel for the stockholders that the legislature could in no case impose an individual liability upon stockholders of any banks excepting those upon which such liability was imposed in the constitution. The constitution having prescribed the personal liability of stockholders in banks of issue, the legislature could not enlarge or diminish such liability, but the legislature was free to extend such liability to other banks.

With one exception, all of these stockholders became such prior to June 17, 1892, when the banking law took effect; and it is urged that such law would be unconstitutional for that reason, if applied to them. In Hirshfeld v. Bopp, 145 N. Y. 97, 98, 39 N. E. 817, the com-

plaint did not allege whether the debts in question were incurred before or after the enactment of the banking law, and I do not understand that the court of appeals considered the question of the application of that law to debts previously contracted; but the court did consider the question as to whether stockholders who acquired their stock before the enactment of the banking law would be liable the same as stockholders who acquired their stock subsequent thereto, and held, in effect, that the liability of both was the same.

The remaining questions submitted in this case relate to the liability of the stockholders to the different classes of creditors of the bank; it being claimed by the defendants that none of the debts were payable within two years from the time they were contracted, within the intent and meaning of section 55 of the stock corporation law, already quoted. The principal creditors are the ordinary depositors, who deposit and check out from day to day as the necessity of their business requires. Such deposits do not draw interest, and they do not become due or payable to the depositors until presentation of a check and demand. The insolvency of the bank dispenses with such presentation and demand, the bringing of this action constitutes a sufficient demand, and the deposits became forthwith due and payable, with interest from the time the bank suspended payment. Sickles v. Herold, 149 N. Y. 334, 43 N. E. 852; Payne v. Gardiner, 29 N. Y. 146; Bank v. Millard, 10 Wall. 152; Van Alstyne v. Bank, 4 Abb. Dec. 449. Such deposits are due within two years, within the meaning of this statute. Hagmayer v. Farley, 23 App. Div. 432, 48 N. Y. Supp. 336.

Another class of creditors are those who hold certificates of deposit payable on return of the certificates and demand. Such demands accrue at the time the certificates are issued, but do not fall due or become payable until returned, and actual demand is made thereon. They are negotiable instruments, and the statute of limitations does not commence to run against them until presentation and demand. They were not presented, and payment was not demanded, before the failure of the bank, and consequently they had not become due or payable. The failure of the bank dispensed with presentation, and the bringing of this action constituted a sufficient demand, and I think the stockholders are liable to the holders thereof. Payne v. Gardiner, 29 N. Y. 146; Howell v. Adams, 68 N. Y. 314; Pardee v. Fish, 60 N. Y. 265; Smiley v. Fry, 100 N. Y. 262, 3 N. E. 186.

The Merchants' Bank, shortly before it failed, drew drafts on other banks, and sent the same to customers in payment of borrowed money, and some of these drafts were dishonored and protested. The Merchants' Bank became liable to the customers to whom it was indebted for borrowed money forthwith upon these drafts being protested, which was within two years from the time the debts were contracted. These were lawful business transactions, as banks have power to borrow money, and to provide for repaying the same in any ordinary manner, and the stockholders are liable to such creditors. Curtis v. Leavitt, 15 N. Y. 9, 222–225.

Another class of creditors deposited money in a special account in this bank, on an express agreement that they were to receive in-

terest thereon, or on the balances remaining on deposit from time to time.   There was no agreement that the money was to remain on deposit for any particular time, and the depositors were at liberty to check against the same at any time.   In such cases the debts thereby created were not due until demand, and they are governed by the same law as is applicable to the other ordinary deposit accounts.

Counsel for the plaintiffs has presented one of each class of claims that have been presented against the bank, for the purpose of having the stockholders' liability therefor determined, and of having the important legal questions settled before the case is sent to a referee.   An interlocutory judgment is granted, determining who the stockholders are, who are liable to creditors, and the amounts of stock held by them, respectively, and adjudging their liability to the classes of creditors as herein considered and decided, and appointing a referee to take proof and determine who are the creditors to whom the stockholders are liable, and the amounts of their respective claims remaining unpaid, and apportioning the deficit among the stockholders, to the extent of their liability.   In re Empire City Bank, 18 N. Y. 199.   It follows from what has been stated that the stockholders are not liable to the holders of certificates of deposit, where such certificates were issued before June 17, 1892; nor are they liable to depositors for deposits made prior to that date, and still remaining unpaid.   In determining whether deposits made prior to June 17, 1892, still remain unpaid, the ordinary rule of the application of payments to the earliest items of indebtedness will be followed by the referee, so that any amounts drawn from the bank by the depositors on or after June 17, 1892, shall be applied in reduction of the depositors' balance at the close of business on June 16, 1892.   I deem this the equitable and proper rule, inasmuch as it appears that no change was made in the books of the bank at the time of enactment of the new law, but that the accounts continued the same as before.   Had the old accounts been closed, and new accounts opened, probably this rule would not be applicable. Morse, Banks (3d Ed.) § 255, and cases cited.

The liability of each stockholder is limited to the amount of stock held by him, at the par value thereof, and interest thereon from the date of the commencement of this action against him.   The depositors and other creditors whose claims were due on demand are entitled to interest on their respective claims from the 6th day of October, 1893, the time when the bank became insolvent, closed its doors, and suspended payment, but not, as against the stockholders, in excess of their total liability.   Wheeler v. Miller, 90 N. Y. 362, and cases cited; Bank v. Bailey, 12 Blatchf. 480, Fed. Cas. No. 2,635; 2 Morse, Banks (3d Ed.) pt. 2, § 150c; Sickles v. Herold, 149 N. Y. 335, 43 N. E. 852.

I have now decided all of the points of law presented in this case, and have sufficiently, I think, stated the rules of law to enable the referee to easily discharge the duties devolving upon him. · Ordered accordingly.