on oral testimony, where opportunity for cross-examination would be afforded. For the jurisdictional defect referred to, the judgment must be reversed. Tyroler v. Gummersbach, 28 Misc. Rep. 151, 59 N. Y. Supp. 266, 319.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

BARNES et al. v. TREVOR et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. BANKS AND BANKING—CONSTITUTIONAL PROVISIONS.

Const. 1846, art. 8, §§ 1–3, providing for the formation of corporations, the alteration or repeal of laws or special acts creating them, and defining the term "corporations" as used in said article, apply to banking corporations, though section 7 declares and defines the liability of stockholders in banks of issue, and section 4 provides for chartering savings banks by general law, prohibits special charters to banks, and requires them to be incorporated under general laws.

2. SAME—LIABILITY OF STOCKHOLDERS—CLAIMS BY DEPOSITORS.

The stock corporation law (Laws 1890, c. 564, § 58) which applies to stockholders of an insolvent bank, declares that no stockholder shall be personally liable for a corporate debt not payable within two years from the time it is contracted, nor unless the corporation is sued for it within two years after it became due. *Held* not to relieve stockholders of an insolvent bank from claims for deposits, since the deposits are due, within the statute, as they are legally enforceable at the option of the creditor within the statutory limit, and, conceding that they are not due unless demanded, the commencement of the action against the stockholders is equivalent to a formal demand.

3. SAME—RIGHT TO SET-OFF.

A stockholder who is also a creditor of an insolvent bank cannot set off its debt to him against his statutory liability for its debts.

Appeal from equity term, Niagara county.

Action by Charles A. Barnes and others against William W. Trevor and others to enforce the statutory liability of stockholders of an insolvent bank. From an interlocutory judgment entered on a decision of the court in favor of plaintiffs, defendants appeal. Affirmed.

In 1863 the First National Bank of Lockport was incorporated pursuant to the United States national bank acts, and in 1883 its corporate existence was duly extended for the period of 20 years by the comptroller of the currency. In February, 1890, the bank went into voluntary liquidation, and on the 1st day of March following it was, in virtue of the provisions of chapter 409 of the Laws of 1882, reorganized as a state bank, under the name of the Merchants' Bank of Lockport. On the 6th day of October, 1893, the bank, being insolvent, suspended business and closed its doors. Shortly thereafter an action was commenced by the people, through the attorney general, for the dissolution of the corporation, and such proceedings were had therein that the defendant Greene was duly appointed temporary receiver of the bank, and on the 26th day of December, 1893, final judgment was entered in the action, dissolving the corporation; declaring its corporate rights, privileges, and franchises forfeited; directing the distribution of its property among its creditors by the receiver, whose appointment was made permanent; and perpetually enjoining and restraining the bank's creditors from bringing any action against it. The capital stock of the Merchants' Bank was $100,000, and at the time of its failure its liabilities amounted to $191,789.27. Under direction of the

court, the receiver paid certain preferred claims, amounting to $20,865.29; and he also paid the general creditors two dividends,—one of 30 per cent. and one of 10 per cent. There still remain in the hands of the receiver various assets which cannot be reduced to money at the present time, but it is conceded that in no possible contingency will the avails of such assets be sufficient to pay the creditors in full. This action, which was duly authorized by the court, was brought by the plaintiff in his own behalf, and for the benefit of all other creditors similarly situated, to enforce the statutory liability of the stockholders of the bank. The issues joined therein were tried by the court without a jury, and such trial resulted in a decision in favor of the plaintiff. An interlocutory judgment was thereupon entered, and from that judgment this appeal is brought.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

John E. Pound, A. K. Potter, and W. H. Ransom, for appellants. David Millar, for respondents.

ADAMS, J. The elaborate and exhaustive opinion of the learned trial justice (23 Misc. Rep. 197, 51 N. Y. Supp. 1109) would render a further discussion of this case unprofitable, were it not for the claim, which is now pressed upon our attention at great length and with much earnestness, that certain considerations which were advanced by counsel, and which are deemed of vital importance to the case, have heretofore been overlooked. In deference, therefore, to such contention, we shall supplement as briefly as possible what has already been so well said with an expression of our own views; but in doing this we shall endeavor to refrain from reiteration of either facts or legal principles, so far as may be consistent with an intelligible discussion of the various questions which the case presents.

As has been suggested, the Merchants' Bank was organized under the statutes relative to banks, as the same were revised by chapter 409 of the Laws of 1882, and the liability of its stockholders, if any, was fixed by section 125 of that act, which reads as follows, viz.:

"Whenever default shall be made in the payment of any debt or liability contracted by any corporation or joint-stock association, for banking purposes, issuing bank notes or any kind of paper credits to circulate as money, the stockholders of such corporation or association shall be individually responsible, equally and ratably, such responsibility to be enforced as hereinafter provided and in no other manner, for the amount of such debt or liability, with interest, to the extent of their respective shares of stock in any such corporation or association, as hereinafter provided."

Ten years later the banking law was again revised, and, as the result of such revision, the provision relative to the stockholders' liability was so far modified as to declare that:

"Except as prescribed in the stock corporation law, the stockholders of every such corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." Laws 1892, c. 689, § 52.

This law went into effect on the 19th day of June, after its enactment, which was a little more than two years subsequent to the organization of the Merchants' Bank; and consequently the vital

question which presents itself at the threshold of this case is whether the effect of the act of 1892 was to impose a new liability upon the stockholders of a bank already existing, and, if so, whether the creation of such new liability was unconstitutional, by reason of the fact that it necessarily tended to impair the obligation of a contract.

It was said by the court of appeals in a recent decision that, while the act of 1892 did change in some respects the methods of enforcing the liability of stockholders in banks, it did not change the essential character of such liability from what it was under the statute of 1882; that under both acts stockholders are liable to the same extent; and that the change in the method of enforcement is not the creation of a new liability. Hirshfeld v. Bopp, 145 N. Y. 84, 39 N. E. 817. It is insisted, however, that the learned judge who delivered the opinion in the case just cited overlooked the distinction which undoubtedly does exist between these two statutes, one of which apparently restricts the liability of stockholders to banks of issue, while the later one imposes the liability upon stockholders of every banking institution, without reference to its being a bank of issue; and it is argued that for this reason the decision is deprived of the force and authority which it would otherwise possess. But whether the language to which reference has just been made may be regarded as an adjudication of the constitutionality of the act of 1892, or as a mere dictum, it was asserted by the appellate division of the First department, upon a review of the same case after a second trial, that it contained a correct statement of the law, although such assertion was based upon reasons different from those assigned by the court of appeals. Id., 27 App. Div. 180, 50 N. Y. Supp. 676. The case was subsequently reversed by the court of appeals, but such reversal left the question we are now considering undisturbed. Same case, sub nom. Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E. 997. It may be assumed, therefore, for the purposes of this review, that the act of 1892 did create a new liability, and one which, so far as the defendant stockholders are concerned, did not theretofore exist, inasmuch as the Merchants' Bank was not a bank of issue. It may also be assumed that, when the stockholders of the Merchants' Bank accepted the privileges and franchises extended to them under the general laws of the state, they entered into a contract with the state which was as inviolable as one created by special statute. In re Lee & Co.'s Bank, 21 N. Y. 9. And, with this much settled, we come at once to the question of whether or not the additional liability which was created by the act of 1892 did impair a contract which was within the protection of the constitution. In considering this question, the right of the legislature to alter, suspend, or repeal the charter of any corporation by reason of the reserve power residing in that body may with some propriety be invoked, for such power undoubtedly was reserved by the general act of 1838 (Laws 1838, c. 260, § 32); and although this entire act was subsequently repealed, without further reservation of the power (Laws 1882, c. 402), there still remained a statutory provision making "the char-

ter of every corporation * * * subject to alteration, suspension and repeal in the discretion of the legislature" (1 Rev. St. tit. 3, c. 18, § 8); and this provision was not repealed until May 1, 1891 (Laws 1890, c. 564, § 73), which was two months subsequent to the organization of the Merchants' Bank. It might be argued with some force, therefore, that the defendant stockholders accepted the charter of their bank with full knowledge that the legislature conferring it had reserved unto itself the power to amend, suspend, or repeal the same. But it seems to us that it is not necessary to have recourse in this instance to what is termed the "reserve power" of the legislature, for the reason that the right to alter and amend any corporate privileges granted by the state is clearly conferred by the fundamental law itself. By article 8 of the constitution of 1846, to which it is conceded on all hands the enactment of 1892 must conform, it was provided, among other things, as follows, viz.:

"Section 1. Corporations may be formed under general laws; but shall not [except in certain cases] be created by special act," and that "all general laws or special acts passed pursuant to this section may be altered from time to time or repealed.

"Sec. 2. Dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law.

"Sec. 3. The term corporations as used in this article shall be construed to include all associations and joint-stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships."

Here, then, is conferred upon the legislature, in unmistakable terms, the power to create any and all corporations by general laws, the right to alter and amend, in its discretion, all such laws, and the power to enact such measures as will secure the creditors of all corporations thus formed by the individual liability of the incorporators, or by such other means as may be deemed advisable. How could a grant of legislative power be more liberally conferred or more clearly defined, and how could the members of any corporation created while these provisions were in operation possibly misconstrue their force and effect? We do not understand the learned counsel who argued this branch of the case to claim that there can be any doubt as to the true intent and effect of the sections above quoted, so far as corporations generally are concerned. He does claim, however, that they have no application to moneyed or banking corporations; and, to support this claim, our attention is directed to the fact that the remaining sections of the article specifically provide for the creation of such corporations, and for the protection of their creditors. Thus, section 4 provides that the legislature shall by general law conform all charters of savings banks or institutions for savings to a uniformity of rights, powers, and liabilities; and then, after some further provisions relating solely to this class of moneyed corporations, the section declares that:

"The legislature shall have no power to pass any act granting any special charter for banking purposes, but corporations or associations may be formed for such purposes under general laws."

And it is argued that this last provision, when taken in connection with section 7, which declares and defines the liabilities of

stockholders "in every corporation and joint-stock association for banking purposes, issuing bank notes or any kind of paper credits to circulate as money," substantially as the same is declared and defined in the act of 1882, indicates an intention upon the part of the framers of the constitution to make special provision for the formation and regulation of banking institutions, and that consequently the legislature, in any enactments pertaining to this class of corporations, must be guided and controlled by these special provisions, to the exclusion of those which have a more general application. This proposition is certainly presented with much ingenuity, and it is supported by an argument abounding in subtle reasoning and forceful, if not persuasive, suggestion. But this argument, followed to its logical conclusion, necessarily leaves the legislature powerless to impose any liability whatever upon the stockholders of a moneyed corporation, unless such corporation happens to be a bank of issue; for, unless sections 1 and 2 of article 8 confer that power, it is without constitutional sanction. Surely so grave and serious an omission ought not to be imputed to the framers of the constitution, constructed at a period in our history when all that pertains to a safe and correct system of banking was uppermost in the minds of financiers and statesmen. It is a familiar rule of construction that a constitution is not to be interpreted in the same manner and upon precisely the same lines as is an act of the legislature. In re Lee & Co.'s Bank, supra. It is rather to be regarded as the embodiment of such principles as in the opinion of its framers are best calculated to produce good government and promote general prosperity. It is not to be doubted that this was the animating spirit of those who were responsible for the constitution of 1846, and we think it is impossible to study that instrument with any degree of care without reaching the conclusion that among the reforms which it was designed to inaugurate was that of creating corporations by general laws, instead of by special act, as theretofore, and of amplifying the powers of the legislature to such an extent that the charter of any and all corporations thus created might be altered, suspended, or repealed in any reasonable manner whenever, in the wisdom of that body, it might seem expedient so to do. It may be said, in explanation of the preference which is apparently given by the language of section 7 to creditors of banks of issue, that at the time the constitution of 1846 was adopted a very large majority of banking institutions, aside from those organized and conducted for savings only, were banks of issue; and while such institutions were, in one sense, a public convenience, they were nevertheless a disturbing element in commercial and private interests, for the security which holders of such a circulating medium possessed was frequently inadequate, and it was doubtless because of this fact that special provision was made to guard and protect as far as possible the creditors of such institutions. But this was done, as we think, without any design of excluding from similar protection the creditors of corporations which were not banks of issue.

We do not pretend to have answered specifically every argument advanced by the learned counsel in support of his contention. That

could not be done within the limits of an ordinary opinion. But we have endeavored to indicate in a general way why we think the conclusion reached by the trial court upon this feature of the case is correct, and that must suffice, so far as this appeal is concerned. In this connection it is proper to add that this case is easily distinguishable from that of Road Co. v. Joel (recently decided by this court) 41 App. Div. 43, 58 N. Y. Supp. 346, and we trust that we have not failed to make clear such distinction. However that may be, the distinguishing features may be briefly summarized as follows, viz.: The case cited was one in which the legislature, in the exercise of its reserve power, attempted to deprive a corporation of its property. This we held could not be done, although we recognized and conceded the right of the legislature to limit or increase the burdens of a corporation to any extent within the scope and object for which it was created. In the present case we simply decide that the liability of stockholders may be increased by legislative enactment, not by virtue of any reserve power, but because expressly authorized by the fundamental law itself.

The further point is made that the defendant stockholders are not liable for any debts existing by reason of deposits in the bank made in the ordinary course of banking business, nor for moneys deposited for which certificates of deposit were furnished by the bank. It will be remembered that section 52 of the act of 1892 excepted from its operation a certain provision, which will be found in section 55 of the stock corporation law, and which declares that:

"No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt became due." Laws 1890, c. 564, § 58.

In view of this qualifying clause, it is now contended that, even if it be held that the liability imposed by the act of 1892 was a valid exercise of legislative power, the claims for which this action is brought were not payable within the time prescribed by the statute, inasmuch as they were deposits, and did not become due until demand made. It is undoubtedly a correct assumption that deposits in a bank are not due until a demand and refusal have taken place. Smiley v. Fry, 100 N. Y. 262, 3 N. E. 186; Munger v. Bank, 85 N. Y. 580; Pardee v. Fish, 60 N. Y. 265; Dorman v. Gannon, 4 App. Div. 458, 38 N. Y. Supp. 659. But nevertheless money thus deposited does become due the moment such demand is made, and it consequently lies within the power of the depositor to perfect his right of action at any time he may see fit so to do. A debt is due when it is legally enforceable, and if, at the option of the creditor, it may be enforced within the statutory limit, then we think it may be said to be due within that limit. The learned counsel invokes what is known as the "rule of reasonable construction" in aid of his contention. This certainly is a safe rule to adopt in any case, for it is one which often requires more stress to be laid upon the spirit than upon the letter of a statute; and it is also one which, if followed, will generally avoid "palpable injustice, contradiction, and absurdity." 1 Kent, Comm. p. 462.

When applied to the statute now under consideration, we think it will demonstrate at once that deposits payable on demand are, within the true intent and meaning of the statute, debts payable within two years; for, now that there are no state banks of issue, deposits constitute a very large proportion of every bank's indebtedness, and, unless such debts are within the contemplation of the act of 1892, the liability imposed by that statute would be of little or no benefit, and as a protective measure it would consequently prove an absurdity. But, if necessary, another perfect and complete answer could be furnished to the contention of the learned counsel. It will hardly be denied, we assume, that had the plaintiffs made a formal demand of the amount of their respective deposits of the bank before commencing this action, and such demand had been refused, their claims would not then have become due; and, if so, why does not the commencement of the action, which is in effect a demand, produce the same result? We think there can be but one answer to this question, especially when it is remembered that the bank had closed its doors, and was in a condition of such notorious insolvency as to reduce a formal demand to the merest idle ceremony. Sickles v. Herold, 149 N. Y. 332, 43 N. E. 852; Hirshfeld v. Bopp, supra.

It only remains to add that the right claimed by the defendant Thompson to offset an indebtedness due him from the bank against his liability for its debts appears to have been settled adversely to his contention. Garrison v. Howe, 17 N. Y. 458; In re Empire City Bank, 18 N. Y. 199.

Our conclusion of the whole matter, therefore, is that the case was correctly disposed of by the trial court, and that the judgment appealed from should consequently be affirmed.

Judgment affirmed, with costs. All concur, except HARDIN, P. J., not voting.