### SIMMELINK v. SUPREME COURT I. O. F.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

Appeal from Trial Term, Monroe County.

Action for injunction by Henry J. Simmelink against the Supreme Court of the Independent Order of Foresters. From a judgment for plaintiff at Trial Term (71 Misc. Rep. 535, 130 N. Y. Supp. 803), defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

John Desmond, of Rochester, for appellant.
James M. E. O'Grady, of Rochester, for respondent.

PER CURIAM. Judgment reversed, and new trial granted, with costs to appellant to abide event. Held: (1) That the action is prematurely brought; (2) that the right of the defendant to increase its rates is controlled by the laws of Canada, and not by the laws of this state. All concur, except SPRING and KRUSE, JJ., who dissent in an opinion by SPRING, J.

SPRING, J. (dissenting). The defendant, a fraternal insurance organization on the assessment plan, originally incorporated in the province of Ontario, was reincorporated in 1889 by special act of the Parliament of the Dominion of Canada, and with a constitution and laws duly adopted by the Supreme Court, which is the governing body of the society, with its head office in the city of Toronto. Its scheme of insurance is carried on by means of subordinate courts or branches established in conformity to the act mentioned, and it was authorized to establish lodges and carry on its business in the state of New York, and that privilege has continued unrevoked.

In 1890, the plaintiff, with others in the city of Rochester, applied for a charter for a local court in that city, which was granted; and the usual certificate or contract of membership was issued to the

plaintiff April 23d of that year. At that time he was 35 years of age, and the contract provided that upon reaching his seventieth birthday he should receive $100, and a like sum on each succeeding birthday until the sum of $1,000 was paid; also a fixed sum to him in case of total and permanent disability, and $1,000 to his widow or personal representatives on satisfactory proof of his death. The only requirement in order that a member might reap these benefits was that he should "be a member in good standing in the order, and not disqualified according to the constitution, laws, rules, and regulations of the Supreme Court." The monthly assessment of the plaintiff was 78 cents, which he paid regularly, and was in good standing at the time of the commencement of this action.

The subject of increasing the assessment rates had been considered at the annual conventions of the defendant, which consisted of delegates from the subordinate courts. In the month of May, 1908, a meeting was called, to convene in Toronto June 16th of that year, with the avowed purpose of increasing the rates, which according to the plan designated would raise the assessment of the plaintiff to $1.65 per month; and this action was commenced June 14th of that year to enjoin permanently the defendant from making said increase, and a temporary injunction was granted. The general plan was adopted in June, 1908, in pursuance of the call for the convention, became effective in October of that year, and has since been in operation.

The plaintiff challenges the power of the organization to add to the assessment which was fixed at the time he joined the defendant. When he was asked to become a member, and at the time of his admission, there was delivered to him a pamphlet to be used in soliciting others to unite with the order, which contained this provision:

"The monthly assessments, which are payable invariably in advance, may be paid monthly, quarterly, semiannually, or annually, at the convenience of the member; and they do not increase as the member grows older, but remain the same so long as he remains continuously in 'good standing' in the order. The right is reserved, however, as required by law, to levy extra assessments, should the necessities of the order ever require it."

The constitution fixed the schedule of monthly rates, and that of a man of 35 at 78 cents, and at the end of this table is added:

"And shall pay the same rate of assessments thereafter so long as he remains continuously in good standing in the order and in the same class."

There is no distinct provision in the constitution, certificate, or application, and they together constitute the contract, authorizing the defendant to increase the assessment rates. There is a provision providing a method for amending the general laws of the order; but it does not refer specifically to any addition to the assessment charges, and it would be a strained construction to include that authority within the compass of this provision. Ayers v. United Workmen, 188 N. Y. 280, 80 N. E. 1020.

In the application, which the plaintiff, with others, presented for the charter, which was granted, is contained this clause:

"We do further severally agree to be bound by all the provisions of the constitution and laws of the order, as enacted from time to time by the Supreme Court of the Independent Order of Foresters."

Apparently it was not intended by the founders of the society to increase the rates at all. The pamphlet so indicates, and the language of the constitution, already quoted, was intended to limit the assessment to that established when the member joined the organization The right to levy an extra assessment, if "the necessities of the order" require it, was probably deemed sufficient for any emergency which might arise; but that authority gave no power to increase the amount which any member must pay to meet the assessment. That sum was supposed to be unchangeable. The fact that the organization reserved the right to levy an extra assessment implies that it did not possess any other authority than this expressly reserved.

Provisions similar to those mentioned have been recently and frequently construed by the Court of Appeals, and invariably adversely to the right to increase the assessment charges, and in some cases where the urgency and propriety of the action taken were apparent. The following are a few of these cases: Wright v. Knights of Maccabees, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838; Dowdall v. Catholic Mut. Ben. Ass'n, 196 N. Y. 405, 89 N. E. 1075, 31 L. R. A. (N. S.) 417; Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020, supra; Beach v. Supreme Tent K. of M., 177 N. Y. 100, 69 N. E. 281.

In the first case cited, the application and the laws of the defendant were made part of the insurance contract, and the member agreed in his application that the laws of the order "now in force, or that may hereafter be adopted, shall form the basis of this contract for beneficial membership." The assessment rates were increased, and the trial court in effect found that the increase in the rate of the number of assessments was necessary for "the continued existence of the defendant." The sum to be paid was stated in the contract, and provided that the member "should pay the same rate thereafter so long as he remains continually in good standing in the order."

In its important features that scheme of insurance and its contract are closely alike those in the present case. The court held the agreement as to the maintenance of the rate was a covenant, adding:

"Hence the right to pay at the old rate was one of the rights provided for, and that he contracted for. It was a vested right, immune from change by amendment, in the absence of a specific reservation of power to amend in that particular."

The prohibition, therefore, upon a mutual benefit association to increase its rates, or substantially to change the benefits accorded to the member by his insurance contract, unless there is a specific authority to make the change, would seem to be well established by the recent authorities in this state.

It is the contention of the appellant that, if these authorities are pertinent on the proposition stated, they have no application to the defendant, as it is a Canadian corporation, and whoever becomes a member of it is amenable to the laws of the Dominion of Canada, so far as they regulate the affairs of this body. By the original act creating the defendant (St. 52 Vict. c. 104, § 11), the Parliament of Can-

ada in the most general language reserved the power to enact legislation pertaining to the affairs of the society. In 1896 the act was amended (St. 59 Vict. c. 51), and by subdivision 6, § 4, the defendant was required to raise by assessments on its members from time to time an amount adequate to meet all its obligations arising from its certificates. A mortuary fund was a part of the plan of insurance for the sum of $5,000 upon the life of any member, and a license was granted to the defendant in pursuance of the amending act of 1901 (St. 1 Edward VII, c. 100, § 5), and which license was to be renewable from year to year as long as the society complies with the requirements of the insurance act, and with its undertaking to maintain a fund sufficient to carry out its mortuary plan in addition to sick and funeral benefits, etc.

The trial court found:

"That the defendant had undivided surplus funds applicable to the payment of death benefits, in April, 1908, of $11,891,747.97, and that in March, 1910, the said undivided surplus funds, so applicable to the purposes of the defendant, amounted to $14,961.799.15, and that the said surplus funds are growing at the rate of $1,000,000 a year."

It also refused to find the distinct request:

"That the rate of assessment paid by plaintiff was at all times inadequate, with its other available funds, to enable defendant to pay all obligations created under all certificates issued prior to 1908."

It also refused to find several requests made by the defendant, the purport of which was to show inadequacy of the assessments under the rates prevailing at the time the action was commenced.

The evidence shows, therefore, that the assets not only were not diminishing, but were increasing from year to year. Mr. Grant, an actuary, testified on behalf of the defendant to the present valuation of its liabilities by virtue of its insurance certificates, which tended to show a marked inadequacy of assets to meet these liabilities. The estimates deduced by this expert were largely speculative. As was said in Wright v. Maccabees, supra, 196 N. Y. at page 404, 89 N. E. at page 1082, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838:

"Moreover, the existence of the defendant, according to the findings, is not now threatened, nor will it be until after the lapse of from 18 to 25 years, and no one can foresee the changes that will take place in the meantime. If the wonderful growth of the defendant, as stated by its counsel, continues, the danger now apprehended as to what may take place a quarter of a century hence may wholly disappear before that period expires."

It is to be noted, also, that if the Canadian membership is retained, with the augmented rates, the sums received may be sufficient to meet every obligation of the defendant.

In its broader aspect, we are not prepared to hold that this foreign corporation may obtain the privilege of doing its business in the state of New York, and under the shield of that license be vested with greater authority than is granted to like organizations incorporated in our own state. The comity which exists among friendly nations, and which enables the corporation of one to carry its charter into the other jurisdiction, does not signify that the privilege is to be

used to the detriment of the domestic organizations within the invaded territory. If they are placed on a level, with an equal opportunity to secure and develop business, the full measure of courtesy to which it is entitled has been extended to the foreign body.

The appellant relies upon Canada Southern Ry. Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020. In that case the railway corporation was organized, and its entire track and equipment, and its business, were in Canada. Bonds were issued by the corporation, and some of them were sold to residents of the state of New York, and payable at the Union Trust Company in the city of New York. The railway corporation became embarrassed, and was unable to meet the interest on these bonds. A refunding arrangement was adopted by the corporation, providing for the surrender of the outstanding bonds and the substitution of other security in lieu thereof, which received the assent of two-thirds of the bondholders, and was ratified and made effective by act of the Dominion Parliament, requiring all the bondholders to conform to this plan. The New York bondholders withheld their assent, and sought to recover on their bonds, and they were defeated in the United States Supreme Court, on the ground that the railway corporation was organized in Canada, and subject to the control and regulation of its Parliament, and as to whatever business it did in New York, and which was confined to the sale of its bonds, it carried its charter with it. The bondholders knew it was a foreign corporation, and that its business was carried on in Canada. It was not required to receive any authority from our state to sell its bonds to its residents. They purchased them in open market. If the corporation were operating a railroad in New York state, I assume it would only be on a parity with other railroad corporations in the state. If it was permitted by the Parliament of Canada to charge passengers at the rate of five cents a mile to be transported over its line, that rate would not be available to it here.

The defendant in this case asked and obtained permission to transact business in this state in competition with like domestic organizations. In granting the courtesy, the defendant was not elevated on a pedestal above other similar bodies.

It is urged that the effect of the decision made is to discriminate against the Canadian members and in favor of the plaintiff and other members of the society in this state. The same disparity existed in the cases referred to. In some states the right to increase rates has been held to rest with the association. If so, the new rates may be prevalent in those states and the old ones in the state of New York.

Again, the defendant itself has created differences in rates. In 1898 they were augmented as to members thereafter uniting with the order, the validity of which could not be successfully assailed, and yet the result of the increase was to make a substantial difference in the monthly rates of two men of the same age; the one joining before the increase and the other thereafter.

The position of the appellant that the action was prematurely commenced does not seem to be tenable. There had been considerable

agitation and discussion over the subject of increasing the assessment rates. Finally a convention was called to meet in Toronto June 16, 1908, the declared purpose of which was to accomplish this increase, and the trend of sentiment indicated the enactment of the desired resolution. The increase was made in pursuance of the call, confirming the regularity of the procedure in calling the convention, and the rates as then fixed have been in operation.

We think the judgment should be affirmed.

KRUSE, J., concurs.