### STOCKWELL v. SUPREME COURT I. O. F.

(District Court, W. D. New York. August 5, 1914.)

INSURANCE (§ 712*)—MUTUAL BENEFIT INSURANCE—ASSESSMENTS—LAW GOV-
ERNING.

Under an act of the Parliament of the Dominion of Canada, author-
izing a benefit insurance society, incorporated by an act of such Parlia-
ment, to apportion a deficiency in the fund for paying certificates of mem-
bers, who joined prior to a specified year, among such members, the so-
ciety was authorized to assess the proportionate share of such deficiency
against the holder of a certificate, delivered, and accepted in New York,
and constituting a New York contract, especially where the right to al-
ter, amend, or repeal the charter was expressly reserved to Parliament;
the act being entitled to the same recognition ordinarily given to the acts
of the Legislatures of other states.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 173–175, 293.
1934; Dec. Dig. § 712.*]

At Law. Action by Carrie E. Stockwell against the Supreme Court of Independent Order of Foresters. Judgment for plaintiff for a part only of the amount sued for.

Michael L. Coleman, of Warsaw, N. Y., for plaintiff.

Love & Keating, of Buffalo, N. Y. (Thomas G. Long, of Washing-ton, D. C., and Elliott G. Stevenson, of Detroit, Mich., of counsel), for defendant.

HAZEL, District Judge. This is an action at law on two certificates of membership issued by the defendant, a fraternal beneficiary society, incorporated by an act of Parliament of the Dominion of Canada (St. 52 Victoria, c. 104). By virtue of said certificates dated July 28, 1892, and March 10, 1902, respectively, the plaintiff, the wife of the deceased holder thereof, was to have become entitled to receive as a benefit the amount of $4,000. The undisputed evidence shows that the deced-ent joined a branch of the order at Attica, N. Y., and that he was in good standing at the time of his death, except that he had not paid a special assessment of $780, levied by the defendant upon the first dated certificate and payable October 1, 1913, and which, accord-ing to a resolution of the society, became a lien thereon. The question to be decided herein is whether the defendant had the legal right, by

virtue of an act of Parliament of the Dominion of Canada, to levy a lump sum against the said certificate after its issuance.

An outline of the facts, together with the procedure adopted in increasing the rates and making the levy, follows: The decedent was 36 years of age when he joined the order. He agreed to pay a monthly assessment of $.84 per $1,000, the society stipulating that such monthly payments would remain at that figure as long as he remained in good standing. In the year 1908, however, the society amended its constitution, materially increasing its rates to $1.91 per $1,000, with the apparent acquiescence or consent of the deceased, who with other members of the class to which he belonged paid the increased rate without demur. In the year 1913 the Dominion Parliament passed an act amending the charter, to become effective upon its acceptance by a two-thirds vote of the Supreme Court of the order. The record shows that at this time there was an anticipated deficiency in the fund for paying certificates of the so-called pre-'99 members, and that such deficiency was due to the low rate paid by such members. Steps were then taken to replenish the depreciated reserve fund, resulting in the amendment of the charter by an act of the Dominion Parliament. By section 4 of the amendatory act it was provided that the valuation deficiency with respect to members joining the society prior to the year 1899 should be apportioned among those members equally, subject, however, to the condition that the amount apportioned against any particular certificate should not be excessive of the reserve proper to that certificate. In accordance with such statutory provision a resolution was adopted by the society which in effect made an assessment against the beneficiary certificate held by the decedent in the sum of $260 per $1,000. Said assessment was not paid by the deceased, and now, after his death, the society withholds payment to his beneficiary of the sum of $780, the full amount of the assessment on his $3,000 certificate.

I do not doubt that the acts of Parliament, increasing the assessment and amending the charter, were binding on all holders of membership certificates residing in Canada, but whether they are equally binding upon citizens of this state, the place where the contract in question was entered into, is a question not free from difficulty. This certificate was a New York contract, delivered to the decedent and accepted by him within this state. Several adjudications in this state, among which are Dowdall v. Supreme Council, 196 N. Y. 405, 89 N. E. 1075, 31 L. R. A. (N S.) 417, Wright v. Maccabees, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838, and Green v. Royal Arcanum, 206 N. Y. 591, 100 N. E. 411, substantially agree that the rates and conditions of payment may be modified in organizations of this description if the certificate contains language sufficiently comprehensive to indicate the reservation of such right. In Green v. Royal Arcanum, supra, the Court of Appeals of this state substantially decided that a certificate in which a member agrees to conform to the rules and usages of the order in force at the time he becomes a member, or such as may thereafter be adopted, does not expressly empower the society to change the rate or to amend the by-laws without the consent of the holder, nor are his rights under the certificate affected by the passage

after the creation of his membership of a statute of the state of Massachusetts; the state in which the society was incorporated authorizing such change or modification. This decision appears to have been based upon the failure to expressly reserve in the policy the right to change the rates; the general language relating to modification of the rules and by-laws not being deemed sufficiently explicit to include such right.

But in the case at bar it seems to me another point is involved, namely, the right of the creator of a society to amend or repeal its charter. By sections 11 and 12 of the amendatory act of the Dominion Parliament the rights of only those members who had become such before the passage of the act were affected. The right to alter, amend, or repeal the charter of the defendant was expressly reserved to Parliament, but, irrespective of such reservation, I think plenary legislative authority existed in it over all corporations created by it. Hodge v. The Queen, Law Reports, 9 App. Cas. 132; Liquidators of the Maritime Bank of Canada v. Receiver General of New Brunswick, Law Reports (1892), App. Cas. 437; Union Colliery Co. v. Bryden, Law Reports (1899), App. Cas. 580.

The reservation of power in the Legislature is a part of the contractual engagement, and it has frequently been held by the courts of this state and by the federal courts that such reserve power cannot be abridged or limited by members of the corporation. Barnes v. Arnold, 45 App. Div. 314, 61 N. Y. Supp. 85; Id., 23 Misc. Rep. 197, 51 N. Y. Supp. 1109; Gardner v. Hope Ins. Co., 9 R. I. 194, 11 Am. Rep. 238; Bissell v. Heath, 98 Mich. 472, 57 N. W. 585. No constitutional authority prevented or interfered with the right of Parliament to reserve to itself the power of repealing or modifying the act under which the society was organized, and indeed a general statute expressly reserving to it such power was actually in force at the time of the passage of the amendments in question.

In such a situation Canada Southern Ry. Company v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020, is thought to be an authority on the effect of the amendment of the charter upon certificate holders who are citizens and residents of this country; and the presumption obtains that the decedent, who of his own volition associated himself with a beneficiary society organized in another country under its laws and limitations, did so with a view thereto, and must therefore be bound by the amendment of the charter and the increase of his assessment.

The Appellate Division for the Fourth Department in a case against this defendant had before it a substantially similar question, and without writing an opinion, tersely held that the right of the defendant to increase its rates is controlled by the laws of Canada, and not by the laws of this state. Simmelink v. The Supreme Court of Independent Order of Foresters, 152 App. Div. 892, 136 N. Y. Supp. 527. Judges Spring and Kruse dissented on the ground that as the society had obtained the privilege of doing business in this state, it must conform to the state laws and statutory provisions, and that to yield to its claim of a right to increase rates would be vesting it with greater authority than is granted to like organizations incorporated here. But I am nevertheless of the opinion that the acts of the Parliament of Canada are enti-

tled to the same recognition as is ordinarily given to the legislation of sister states. The fact that the defendant transacted business in this state under its license is immaterial, for it presumably complied with the restrictions imposed by the state as a condition of so doing.

For the foregoing reasons I hold that the act of the defendant in levying the assessment of 1913 on the first-dated certificate was lawful and binding upon the plaintiff in this action, and the decree for the plaintiff should therefore be for the amount due the plaintiff on both certificates of membership, less the amount of $780, the said assessment or levy. So ordered.

N. B. The Simmelink Case came on a second time before the Appellate Division, at which time four of the Justices concurred in the previous decision, Judge KRUSE alone dissenting. 147 N. Y. Supp. 1141. Judge SPRING and Judge McLENNAN having died in the interim, Judge LAMBERT and Judge MERRELL, their successors, voted with the majority.