EUGENE LAMB RICHARDS, as Superintendent of Banks, Plaintiff, *v.* AUGUST C. SCHARMANN, et al, Defendants.

(Supreme Court, Kings Special Term, October, 1916.)

Banking Law — authority of superintendent of banks to enforce liability of shareholders — statute in force when superintendent takes possession governs — motion to dismiss complaint denied.

Where the superintendent of banks has taken possession of the assets and business of a trust company and caused its operations to be suspended before its default in payment of any of its obligations, all questions as to the liability of the shareholders and all questions as to the authority of the superintendent to enforce such liability by an action must be determined by the law then in force.

Where the superintendent took possession of a trust company in 1908 the question of his authority to maintain an action to enforce the constitutional (State Constitution, art. VIII; § 7) and statutory (Laws of 1892, chap. 689, § 162) liability of the shareholders is to be determined by the provisions of section 19 of the Banking Law of 1909 (Laws of 1909, chap. 10) which were in section 18 of the Banking Law of 1892, as amended in 1908, so that they were in full force and effect when the superintendent originally took possession of the trust company; such provisions were without change transferred to the Consolidated Laws.

In such action the determination of all matters of evidence and procedure must be governed by the law as it existed prior to the enactment of section 80 of the Banking Law (Laws of 1914, chap. 369) as it is obvious that the provisions relating to procedure and evidence therein contained, except that permitting several suits against shareholders, were only intended to be applicable to an action brought under that section.

The corporate existence of a trust company is not terminated when the superintendent of banks takes possession; the management is, however, by force of law thereupon vested in him and he can as well order a suspension of payments which constitutes a default as the trust company's own officers, into

whose shoes, so to speak, he steps, and a contention that defendants are not liable because there was no default on the part ol the trust company until the superintendent took possession of its assets and business, and that the default, *in invitum,* so to speak thus occasioned, cannot be made the basis for the enforcement of the liability of the shareholders, is untenable. ·

The action is maintainable as a suit in equity, and an objection that the superintendent cannot maintain the action until he has liquidated all the assets is untenable.

The Court of Appeals having approved the complaint herein which alleged that all the assets had not been liquidated, the prayer for relief asking among other things that such unliquidated assets be converted under the direction of the court, a motion to dismiss the complaint made at the close of plaintiff's case will be denied and defendants put to their proof.

ACTION to enforce the constitutional and statutory liability of the shareholders of the Lafayette Trust Company.

Carmody, Kellogg & Gormly (Joseph A. Kellogg and Wilbert Ward, of counsel), for plaintiff.

Latson & Tamblyn (Almet Reed Latson, of counsel), for certain defendants.

BENEDICT, J. This is an action by the superintendent of banks to enforce the constitutional and statutory liability of the holders of shares of stock of the Lafayette Trust Company.

There is now before me a motion, upon which decision was reserved to enable counsel to submit briefs, to dismiss the complaint, made at the close of plaintiff's case, upon twelve grounds. These grounds may, however, be so grouped as to be discussed under four heads as follows:

1. Has the liability of the shareholders attached, or were they relieved of liability by reason of the fact

that the superintendent took possession of the assets and business of the trust company and caused its operations to be suspended before it had defaulted in the payment of any of its obligations?

2. Can this action be maintained as a suit in equity?

3. Is the superintendent debarred from maintaining this action because he has not liquidated all the assets of the company?

4. Has the plaintiff given sufficient evidence to sustain his cause of action?

Before entering upon the discussion of these questions, it is important to determine by what statutory provisions they are to be determined. This is necessary because the Banking Law has been amended from time to time. The superintendent of banks took possession of the trust company on November 30, 1908, and all questions as to the liability of the shareholders must be determined by the law then in force. The precise date of the commencement of the action is not before me, but it appears to have been in or about November, 1911, and hence all questions as to the authority of the superintendent of banks to institute such an action and the conditions precedent thereto must be determined by the law in force at that date. Questions of practice and procedure are to be determined by the statute now in force, unless that is to be construed as not affecting actions brought prior to the time it took effect.

A brief statement of the constitutional and statutory provisions deemed applicable may be helpful. First we have section 7 of article VIII of the State Constitution, which reads as follows: "The stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or

shares of stock in any such corporation or association, for all its debts and liabilities of every kind.''

Then we have section 162 of the Banking Law of 1892 (Laws of 1892, chap. 689), contained in article IV relating to trust companies, which section, so far as material here, reads as follows: '' If default shall be made in the payment of any debt or liability contracted by any such corporation, the stockholders thereof shall be individually responsible, equally and ratably, for the then existing debts of the corporation, but no stockholder shall be liable for the debts of the corporation to an amount exceeding the par value of the respective shares of stock by him held in such corporation at the time of such default.''

It is by these two provisions that the question of liability is to be determined.

The question of the authority of the superintendent to maintain this action is to be determined by section 19 of the Banking Law of 1909 (Laws of 1909, chap. 10; Consol. Laws, chap. 2), which reads, so far as material, as follows: '' Whenever it shall appear to the superintendent that any corporation * * * to which this chapter is applicable has violated its charter or any law of the state, or is conducting its business in an unsafe or unauthorized manner, or if the capital of any such corporation * * * is impaired * * * or if any such corporation * * * shall suspend payment of its obligations, or if from any examination or report provided for by this chapter the superintendent shall have reason to conclude that such corporation * * * is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe or inexpedient for it to continue business, * * * the superintendent may forthwith take possession of the property and

business of such corporation  *  *  *  and retain such possession until such corporation  *  *  * shall resume business, or its affairs be finally liquidated as herein provided.  *  *  *  The superintendent shall collect all debts due and claims belonging to it, and upon the order of the supreme court may sell or compound all bad or doubtful debts, and on like order may sell all the real and personal property of such corporation  *  *  *  on such terms as the court shall direct; and may, if necessary to pay the debts of such corporation, enforce the individual liability of the stockholders.''

These provisions were in section 18 of the Banking Law of 1892, as amended by Laws of 1908, chapter 143, in effect April 20, 1908, so that they were in force when the superintendent originally took possession of the Lafayette Trust Company. They were transferred without change to the Consolidated Laws.

As to matters of evidence and procedure the statutory provisions now in force are contained in section 80 of the Banking Law of 1914 (Laws of 1914, chap. 369), but a reading of this section makes it obvious that the provisions relating to procedure and evidence therein contained, except the provision permitting several suits against shareholders (*Van Tuyl* v. *Schwab,* 172 App. Div. 670), can only have been intended by the legislature to be applicable to an action brought under that section; and hence I think that, in determining questions of procedure and evidence, we must be governed by the law as it existed prior to the act of 1914.

1. Taking up the first question, then, the defendants urge that they are not liable because there was no default on the part of the Lafayette Trust Company until the superintendent took possession of the assets

Supreme Court, October, 1916.    [Vol. 97.

and business of the company, and that the default, *in invitum*, so to speak, thus occasioned cannot be made the basis for the enforcement of the liability of the shareholders. If the statutory provision already quoted relating to the liability of the shareholders of trust companies, which differs materially from a corresponding provision relating to banks, stood alone, there might be merit in this contention; for it begins, " If default be made in the payment of any debt or liability," etc., " the stockholders * * * shall be individually liable," etc. But behind the statute stands the constitutional provision, also quoted above, which makes all the shareholders of all banking corporations individually responsible for the debts thereof to the amount of their shares of stock, without any other condition or limitation whatsoever. In this connection we note that the superintendent is authorized to take possession of the assets and business of banking corporations and bankers for many causes other than default in the payment of obligations, and which may exist without any such default. Banking Law, § 19, quoted *supra;* also Banking Law of 1892, § 18, as amended by Laws of 1908, chap. 143. If, therefore, a " voluntary " default, so to speak, were necessary in case of a trust company to cause the individual liability of the shareholders to attach, the superintendent in order to preserve such liability would have to await the voluntary suspension of the trust company, which might take place only after a " run " resulting practically in the preference of some creditors over others, or after the inside creditors had absorbed all the convertible assets to the exclusion of the depositors and other creditors. If on the other hand the superintendent should take possession of a tottering institution before an actual default, in order

to conserve the assets for all the creditors, he would by this act relieve the shareholders of their constitutional liability. Any construction of the statute which would lead to such results would be intolerable. We must construe the statute, if we can, so that it shall not nullify the constitutional provision, and so that one part of the statute shall not nullify another part. This can easily be accomplished by interpreting the word " default " in section 162 (quoted *supra*) to mean not only a default suffered by the bank's own officials, but a default resulting from action by the superintendent. The corporate existence of a trust company is not terminated when the superintendent takes possession. The management is, however, by force of law thereupon vested in the superintendent, and he can as well order a suspension of payments, which constitutes a default, as the trust company's own officers, into whose shoes he steps, so to speak.

2. The defendants contend that this is purely an action at law and that no ground exists for a suit in equity. All discussion of this question is, I think, foreclosed by the decision of the Court of Appeals in this action *sub nom. Van Tuyl* v. *Scharmann,* 208 N. Y. 53. Van Tuyl was the predecessor in office of the present plaintiff, who has since been substituted in his place. The court there had before it the original complaint in this action, setting forth substantially the same facts as the amended complaint now before me, and demanding substantially the same relief, and the demurrer thereto on the ground among others that the complaint did not state facts sufficient to constitute a cause of action. The relief demanded was as follows: " Wherefore the plaintiff demands judgment directing and decreeing that any remaining unconverted assets of said Lafayette Trust Company may be sold

and disposed of as provided by law, that an accounting be had of all outstanding and existing assets and liabilities of said corporation, that the amount of deficiency necessary to pay in full said company's debts and liabilities as judicially ascertained by the court be apportioned among the stockholder defendants herein ratably according to the number of shares of said Company's capital stock held by them respectively; that each defendant pay the portion thereof adjudged to be paid by him, and that plaintiff have such other and further relief in the premises as to the Court may seem just and equitable, including the costs and disbursements of this action.''

In affirming the judgment overruling the demurrer the Court of Appeals necessarily determined not only that the facts alleged constituted a cause of action, but also that the relief demanded, which was equitable in nature, was appropriate to the facts alleged; for, as no answer had been interposed, the plaintiff could not have a judgment more favorable than he had demanded. Code Civ. Pro. § 1207.

It matters not that the question now raised does not seem to have been raised in the Court of Appeals, or discussed in the opinion of that court. Any objection which might have been urged to the sufficiency of the complaint must be regarded as having been overruled. For the decision is not merely a precedent, but it settles the law of the case. It constitutes, so to speak, *res judicata* so far as this action is concerned. Apart from this decision, however, there seems to be an abundance of authority for the maintenance of the action in equity. *Cheney* v. *Scharmann,* 145 App. Div. 456, 462; *Van Tuyl* v. *Kress,* 172 id. 563; *Van Tuyl* v. *Sullivan,* 156 N. Y. Supp. 309, 312; affd., 217 N. Y. 691. See *Mosler Safe Co.* v. *Guardian Trust Co.,* 208 N. Y. 524, 530.

3. The considerations just expressed relative to the right of the superintendent to maintain this action as a suit in equity apply to the objection that the superintendent cannot maintain it until he has liquidated all the assets. It appeared by the complaint before the Court of Appeals in this action that all the assets had not been liquidated, and indeed the prayer for relief asked among other things that such unliquidated assets be converted under the direction of the court. The Court of Appeals having approved the complaint in this form, all further discussion of the question is foreclosed.

4. The complaint having been thus authoritatively approved, it only remains for me to determine whether its essential allegations have been proved, taking the evidence offered by plaintiff as true, and allowing to him the benefit of every favorable inference which may be drawn therefrom, as under the authorities I am bound to do.

Upon this question, too, some of the arguments urged on behalf of the defendants must be rejected under the decision of the Court of Appeals. For example, it is claimed that the superintendent must show, in order to recover prior to a full liquidation, that there will be a deficit equal to or exceeding the entire amount of the outstanding capital stock at par, namely, $500,000. No such deficit, nor any certain amount of deficit, is pleaded in the complaint. It is merely alleged that a deficit exists, and, if that be proved, then the court should award such a judgment as is prayed for. It seems to me that it has been fairly established, at least for the purposes of this motion, that there is a deficit. The defendants in their case may, of course, show that the estimates of the values of certain assets by the plaintiff's witnesses were too low, **and that in fact there is no deficit. They may**

also, perhaps, show that there would have been no deficit but for improper expenditures by the superintendent. If it shall be determined, after all the evidence is in, that a deficit exists, it will then be the duty of the court to direct judgment in accordance with the prayer for relief. Upon the accounting to follow, after the liquidation of the remaining unconverted assets, all equities in favor of the shareholders by reason of improper expenditures, if any, by the superintendent, or otherwise, and the question of interest, can be adjusted.

The conclusion which I have reached, as already indicated, will, I think, result in benefit in the long run to both creditors and shareholders; for much the same condition seems to exist with respect to the liquidation of the Lafayette Trust Company as with respect to that of the Union Bank, upon which I recently had occasion to comment. *Matter of Union Bank of Brooklyn,* 96 Misc. Rep. 299.

One of the results of this action ought to be to bring to a close this protracted liquidation which has now extended over a period of nearly eight years, to the great apparent prejudice of creditors and shareholders, in the eating up of good assets by taxes and expenses.

I will, therefore, deny the motion to dismiss the complaint, and put the defendants to their proof. The parties may appear before the court at an adjourned session of the May, 1916, Special Term, Part III, on the 10th day of November, 1916, at ten A. M., at the room of Trial Term, Part IV, Kings county. The denial of the motion will be entered in the minutes of the trial, and an exception allowed to all the defendants. No order need be entered.

Ordered accordingly.