EUGENE LAMB RICHARDS, as Superintendent of Banks of the
State of New York, Respondent, Appellant, *v.* JOSEPH G.
ROBIN and Others, Defendants, Impleaded with LOUIS I.
BARON and Others, Respondents, and WILLIAM R. CRAIG
and Others, Appellants.

First Department, June 8, 1917.

Banks and banking — suit by State Superintendent to enforce
statutory liability of stockholders — evidence furnishing prima
facie proof of insolvency and excess of liabilities — claims filed
by former Superintendent of Banks — records of public officers
as evidence — powers and duties of State Superintendent —
when State not estopped from enforcing liability of stockholder
because transferees are brought in as additional defendants —
failure of stockholder to compel indemnity by transferee — record
holder and actual owner equally liable — stockholder of former
bank not participating in or knowing of merger not liable —
liability where transfer not recorded — escape from liability by
attempt to effect transfer.

Action by the Superintendent of Banks of the State of New York to enforce
the statutory liability of stockholders of an insolvent bank, one of the
defendant stockholders contending that the plaintiff failed to produce
competent proof to support a finding that the bank was insolvent at the
time the action was brought, or that its liabilities exceeded its assets —
the par value of its capital stock — by a certain amount. Evidence
examined, and *held,* sufficient to establish *prima facie* the insolvency of
the bank and the excess of liabilities over assets.

The inventory of assets and list of claims filed by a former State Superin-
tendent of Banks under section 19 of the former Banking Law was, by
virtue of section 922 of the Code of Civil Procedure, making a record
filed by a public officer presumptive evidence of facts therein contained,
properly admitted in evidence and was sufficient to establish a *prima facie*
case of insolvency.

As section 19 of the former Banking Law required the Superintendent of
Banks to file lists of claims " including and specifying such claims as
have been rejected by him," it placed upon him the duty of ascertaining
which were valid and which were invalid claims, and his act of returning
claims not rejected is equivalent to an express allowance thereof.

Especially is the validity of such claims established where dividends have
been declared thereon by order of the court, made on application of the
State Superintendent.

A defendant stockholder cannot escape liability because the plaintiff brought
in as additional defendants persons to whom bank stock had been trans-
ferred, upon the contention that he was misled by the allegations of the

supplemental complaint and thus failed to seek affirmative relief against brokers who had purchased his stock at auction for a certain customer, said stock being in the hands of the State Superintendent, irrespective of whether or no the supplemental complaint identified the stock sold to others. The plaintiff was at liberty not only to bring in the defendant as a record holder, but also the transferees, for both are liable.

Moreover, the State Superintendent was at liberty to proceed against the record holder only.

But holders of the stock of a former bank which, through merger unauthorized by and unknown to them, was incorporated into the bank now insolvent, are not liable for the statutory liability. Nor can they be held liable because after the merger the new bank carried them on its books as stockholders, for they could not be made such without their consent, express or implied, or by a waiver of the invalidity of the merger as to them.

A person who appeared as a stockholder on the books of the bank at the time it was taken over by the State Superintendent should have been charged with the liability, although the stock had been put in his name by his employer, a trust company which held it as collateral security, and even though the stock had been transferred to other parties, if no attempt was made to register the transfer.

But where a record stockholder had sold his shares, and on making inquiry was informed by a director of the bank that the transfer had been recorded, he did all that could reasonably be required of him to effect the transfer, and he is relieved from liability as a stockholder.

Appeal by the plaintiff, Eugene Lamb Richards, as Superintendent of Banks, from so much of a judgment of the Supreme Court in favor of certain of the defendants, entered in the office of the clerk of the county of New York on the 24th day of June, 1915, as dismisses the complaint upon the merits as against the defendants Louis I. Baron and others upon the decision of the court after a trial at the New York Special Term, and also from so much of the final judgment entered on the 25th day of September, 1915, as dismisses the complaint as to the defendant Louis I. Baron.

Appeal by the defendants, William R. Craig and others, from so much of the judgment entered in the office of the clerk of the county of New York on the 24th day of June, 1915, as adjudges that the plaintiff recover from them in this action.

*David Hunter Miller,* for the appellant Craig.

*Jason G. Lamison,* for the appellant Lauferty.

*Theodore B. Richter,* for the appellants H. Richter's Sons.

*Joseph M. Hartfield,* for the respondent McCabe.

*Jacob W. Block,* for the respondent Baron.

*Charles W. Lucas,* for the respondent Block.

*Henry H. Abbott,* for the plaintiff as respondent.

SMITH, J.:

The Superintendent of Banks of the State of New York took possession of the Northern Bank of New York on December 27, 1910, and thereafter proceeded to liquidate its affairs as provided by section 19 of the former Banking Law (Cons. Laws, chap. 2 [Laws of 1909, chap. 10], as amd. by Laws of 1910, chap. 452). This action was subsequently commenced to enforce the statutory liability of the stockholders of the bank (See N. Y. Const. art. 8, § 7; former Banking Law, §§ 19, 71), and was originally brought against the stockholders of record only; but by a supplemental summons and complaint the transferees of certain shares were brought in as additional defendants. A number of the defendants paid assessments to the full amount of their stock during the pendency of the action, and judgment has been rendered to the full extent of their liability against the remaining defendants with the exception of a few, including the three respondents on plaintiff's appeal, as to whom the complaint was dismissed on the merits by reason of special circumstances to which — as far as material — reference will be made later.

The sole ground for reversal advanced by the appellant Craig — who concededly was a stockholder — is that the plaintiff failed to adduce competent proof to support the findings made by the trial court that the Northern Bank was insolvent at the time this action was brought or that its liabilities exceeded its assets by $700,000 — the par value of its capital stock. And the same point is also made by the appellants Lauferty and H. Richter's Sons. To establish the assets of the Northern Bank at the time this action was commenced plaintiff introduced in evidence, over objection to its competency and exception, an inventory of assets verified by the then Superintendent of Banks and filed in the office of the clerk of the county of New York pursuant to the requirements of section 19 of the former Banking Law.

This inventory showed assets amounting, according to the bank's books, to $7,073,598.91. Plaintiff then showed losses aggregating $1,528,248.01 upon various items included in the inventory, and I do not understand that the appealing defendants now question seriously either the competency or sufficiency of the proof as to these losses. To prove part of the liabilities plaintiff relies on certain lists of claims aggregating $5,463,172.72 filed with and not rejected by his predecessors in office, which lists were made and filed in the office of the clerk of the county of New York in accordance with the provisions of section 19 of the former Banking Law. These lists were offered and admitted as proof " that the claims were filed, not that the claims were valid." Orders of the Supreme Court directing the payment of dividends upon those claims were also admitted in evidence. As proof of further liabilities plaintiff relies on the testimony of one Horne, the Special Deputy Superintendent of Banks, who had charge of the liquidation of the Northern Bank, to the effect that the Superintendent of Banks had allowed offsets of $800,000 against claims not included in the lists above mentioned and had paid in full preferred claims of $121,000 not included in said lists. To summarize, the inventory of assets and lists of claims, together with the proof as to losses, offsets and preferred claims paid, shows an excess of liabilities over assets of upwards of $800,000, a figure arrived at as follows:

| | | |
|---|---|---|
| Claims filed with and not rejected by the Superintendent of Banks | $5,463,172 72 | |
| Offsets allowed by the Superintendent of Banks against claims not included in the lists of claims filed | 800,000 00 | |
| Preferred claims paid but not included in the lists of claims filed | 121,000 00 | |
| | $6,384,172 72 | |
| Book value of assets......... $7,073,598 91 | | |
| Less ascertained losses....... 1,528,248 01 | | |
| | 5,545,350 90 | |
| Deficiency of assets.................... | $838,821 82 | |

I am of opinion that this evidence was sufficient to establish *prima facie* the insolvency of the bank and an excess of liabilities over assets of more than the par value of the capital stock. It is clear that the trial court was right in holding that the inventory of assets and lists of claims were of the character of official public statements, prepared and filed in fulfillment of a duty imposed by law and open to public inspection. (See former Banking Law, § 19.) They accordingly come squarely within section 922 of the Code of Civil Procedure, which provides: "Where a public officer is required or authorized, by special provision of law, to make a certificate or an affidavit, touching an act performed by him, *or to a fact ascertained by him,* in the course of his official duty; and to file or deposit it in a public office of the State; the certificate or affidavit, so filed or deposited, or an exemplified copy thereof, is presumptive evidence of the facts therein alleged, * * *." It may be noted that this section incorporates into the Code a portion of the broader common-law rule that an official statement kept or prepared by or under the direction of a public officer, acting under his oath of office, either pursuant to a positive requirement of statute or in the discharge of a public duty, is competent *prima facie* evidence as against all the world of such facts therein stated as the official was required or authorized by law to state (3 Wigm. Ev. § 1630 *et seq.; Saranac Land & Timber Co.* v. *Roberts,* 208 N. Y. 288, 299; *Board of Water Comrs. of Cohoes* v. *Lansing,* 45 id. 19; *People ex rel. Stone* v. *Minck,* 21 id. 539; *Evanston* v. *Gunn,* 99 U. S. 660; *Gaines* v. *Relf,* 12 How. [U. S.] 472, 570.) It is contended on behalf of the appealing defendants that because the lists of claims were received in evidence for the limited purpose of proving the filing but not the validity of such claims, they cannot be considered as even presumptive evidence of liabilities. But the proof of the filing makes *prima facie* proof of their verity. They are in the case. They are adequate *prima facie* proof of liabilities and may be regarded as such. Section 19 of the former Banking Law required the Superintendent of Banks to prepare and file lists of the claims presented "including and specifying such claims as have been rejected by him," and the express power to reject claims was given him by the same section. This by

clear implication placed upon him the duty of ascertaining which were valid and which were invalid claims. It is plain, therefore, that his act in returning lists of claims as not rejected is equivalent to an express allowance of such claims. Moreover, it is in evidence that dividends have been declared thereon by order of the court made on the application of the Superintendent, and such allowance, it seems, *prima facie* establishes their validity. The Superintendent of Banks is a statutory receiver (*Matter of Union Bank,* 204 N. Y. 313, 317) and is in effect a receiver of moneyed corporations. (*Cheney* v. *Scharmann,* 145 App. Div. 456, 470.) As such, his powers include the same power to allow or reject claims as is given to executors (Gen. Corp. Law [Consol. Laws, chap. 23; Laws of 1909, chap. 28], §§ 156, 161) whose allowance of claims is *prima facie* proof of their validity. (*Matter of Warrin,* 56 App. Div. 414.) The assets and liabilities thus claimed by him would, therefore, seem to have been *prima facie* established.

The appellant Lauferty makes further objection that the plaintiff is estopped from recovering judgment against him because of the following facts: In the original complaint Lauferty was sued as the owner and holder of record of eleven shares of stock. After he had answered denying that he was a stockholder, the plaintiff served a supplemental summons and complaint joining as defendants individuals to whom various record holders claimed to have transferred their stock and alleging *inter alia* that with respect to 309 certain shares standing on the books of the bank in the names of other defendants, the defendant firm of Battles & Co. " purchased and became the actual owners " thereof and are " the trans-ferees " thereof and liable to assessment thereon, and further that the defendant Morris " purchased and became the actual owner " of 309 certain shares standing in the names of other defendants and " is the transferee " thereof and liable to assessment thereon, and further that the defendant Robin " purchased and became the actual owner " of 636 certain shares standing in the names of other defendants and " is the transferee " thereof and liable to assessment thereon. Two members of the firm of Battles & Co. answered and Lauferty then filed an amended answer alleging that he had sold his stock at auction to Battles & Co. and asking affirmative

judgment to the effect that Battles & Co. save him harmless from plaintiff's claim against him. It appeared on the trial that Battles & Co. had bought Lauferty's stock as brokers for Morris and that the certificate representing that stock had been in the possession of the Superintendent of Banks since December, 1910, having prior thereto been taken over in connection with the liquidation of the Carnegie Trust Company which held it as collateral for an indebtedness of the defendant Robin. Lauferty's claim is that he was misled by the allegations in the supplemental complaint, made at a time when plaintiff was in possession of Lauferty's certificate and knew that Robin was the owner of the stock represented thereby, into seeking affirmative relief against Battles & Co. only, and hence that plaintiff is estopped from recovering judgment against him. It is clear that the contention is without merit. In the first place, it is hard to see how Lauferty could have been misled by the allegations of the supplemental complaint which does not identify his stock as among that sold to or held by Battles & Co., Morris or Robin. But if it did so identify it, Lauferty would be in no better position, for plaintiff was at perfect liberty to bring in as defendants both the record holder and the transferees of the stock, for both the record holder and the actual owner were liable (former Banking Law [Consol. Laws, chap. 2; Laws of 1909, chap. 10], § 2, as amd. by Laws of 1910, chap. 126; *Van Tuyl* v. *Robin,* 160 App. Div. 41; affd., 211 N. Y. 540), and he was at equal liberty then to proceed to judgment against the record holder only (*Wheeler* v. *Werner,* 140 App. Div. 695); indeed this procedure made it possible for Lauferty to seek such affirmative relief by way of exoneration as he might be entitled to against any or all of the transferees. He did pursue Battles & Co. and appealed from that portion of the judgment refusing him relief against them, but later procured the dismissal of that part of his appeal. There is nothing in the supplemental complaint which justified him in supposing that plaintiff asserted Battles & Co., rather than Morris or Robin, to be the actual owner of the stock. Furthermore, the fact that plaintiff knew that Robin was the actual owner of the stock is not established by the record, and if it were, it would not affect plaintiff's right to pursue

First Department, June, 1917.    [Vol. 178.

and recover from Lauferty as the record holder. (*Wheeler* v. *Werner, supra.*)

The facts peculiar to the appeal of H. Richter's Sons are as follows: The members of this firm owned fifty shares of the stock of the " old " Northern Bank when in June, 1908, that bank, the Riverside Bank and the Hamilton Bank were merged into a single institution called the Hamilton Bank of New York, which subsequently changed its name to the Northern Bank of New York. The trial court has found that H. Richter's Sons did not have lawful notice or knowledge of the merger and that as to them it was, therefore, invalid and ineffectual; but has nevertheless held them liable as holders of fifty-five shares of stock in the " new " Northern Bank on the theory, as appears from the opinion, that they were estopped by long acquiescence from questioning the merger. Neither the findings nor the evidence justify such a conclusion. In addition to the findings as to lack of notice and knowledge, there are others to the effect that H. Richter's Sons never gave up their certificate of stock in the " old " Northern Bank or received a certificate of stock in the " new " Northern Bank, or participated in or had knowledge of the conduct of the business of either of them, or ever stated to any one that they were stockholders in the " new " Northern Bank; and it appears by uncontradicted evidence that they did not learn of the merger until " probably about a year " after it took place — approximately eighteen months prior to the taking over of the Northern Bank by the Superintendent of Banks. Even though H. Richter's Sons were carried on the books of the " new " Northern Bank as stockholders, it is clear that they were not stockholders in fact, for their consent, express or implied, was necessary to the creation of the relation (*Glenn* v. *Garth,* 133 N. Y. 18, 44), and while doubtless they might have waived the invalidity of the merger, I am of opinion that the facts proved fail to establish either express or implied consent, waiver or estoppel.

Plaintiff appeals from so much of the judgment as dismisses the complaint on the merits as against the defendants McCabe, Baron and Block. At the time of the closing of the Northern Bank, McCabe appeared upon its books as the owner and holder of thirty shares of its stock, which had been put in

his name for the convenience of his employer, the Bankers' Trust Company, which held them as collateral security. Twenty of these shares had in fact been transferred previously to Baron and will be hereafter discussed. Ten shares, however, had been transferred to Battles & Co. The transfer was not recorded and it does not appear that any attempt whatever was made by any one to register this transfer on the books of the bank. Upon those ten shares, therefore, McCabe was liable to assessment. (*Van Tuyl* v. *Robin, supra.*)

Baron, at the time he bought the twenty shares standing in McCabe's name, was the owner of fifty other shares and he still appeared as the record holder thereof when the bank closed. Prior to the latter date he sold all seventy shares to Robin, who was a director, and according to Baron's testimony, which was not objected to, an officer of the Northern Bank. Subsequently he went to the Broadway branch of the bank to ascertain whether the transfer had been registered on the books. He saw Robin and the manager and assistant manager of the branch, and Robin directed the latter to make inquiry by telephone at the main office, where apparently the stock book was kept. The testimony is that the assistant manager did so and reported as a result of the telephone conversation that the stock had been transferred. It is manifest that Baron did all that could reasonably be required of him to effect the transfer and that by so doing he relieved himself from liability as a stockholder (*Whitney* v. *Butler*, 118 U. S. 655), and I see no reason why his acts should not operate to release McCabe likewise as to the twenty shares Baron purchased from him. The plaintiff claims that Baron referred only to the fifty shares standing in his own name when he made his inquiry, but that is, I think, too narrow a construction of the evidence.

The conclusion reached as to Baron applies with equal force to the defendant Block. Robin purchased his stock some three months prior to the closing of the bank, told his attorney that it would be transferred on the books and a few days later in answer to the attorney's inquiry assured him that the transfer had in fact been made.

It follows that the judgment so far as appealed from by the defendants H. Richter's Sons should be reversed and the complaint and supplemental complaint dismissed as to them;

. First Department, June, 1917.          [Vol. 178.

that upon the appeal of the plaintiff the judgment should be reversed in so far as it dismisses the . complaint and supplemental complaint as against the defendant McCabe, and that judgment should be entered against him as a holder of ten shares of stock. In all other respects the judgment is affirmed. Finding of fact numbered twelve should be modified by striking out the names of the members of the firm of H. Richter's Sons; and finding of fact numbered forty-one should be modified (with reference to McCabe) in accordance with opinion. The plaintiff is entitled to costs against the defendants Craig, Lauferty and McCabe, and the defendants H. Richter's Sons, Baron and Block are entitled to costs against the plaintiff. The expenses of printing the record will be paid by plaintiff out of the fund in his hands.

CLARKE, P. J., DOWLING, PAGE and SHEARN, JJ., concurred.

On defendants Richter's appeal, judgment reversed and complaints dismissed as to them; on plaintiff's appeal, judgment reversed as to defendant McCabe, and judgment ordered as directed in opinion. In all other respects judgment affirmed. Plaintiff awarded costs against defendants Craig, Lauferty and McCabe; and defendants H. Richter's Sons, Baron and Block awarded costs against plaintiff. The expense of printing record to be paid by plaintiff out of fund in his hands. Order to be settled on notice.