EUGENE LAMB RICHARDS, as Superintendent of Banks, Plaintiff, *v.* CHARLES M. SCHWAB et al., Defendants.

(Supreme Court, New York Special Term, September, 1917.)

Evidence — considered in action by superintendent of banks to enforce statutory liability of stockholders — pleading — dismissal of complaint — banks.

The evidence in an action brought by the superintendent of banks to enforce the statutory liability of the stockholders of the " Carnegie Trust Company " in liquidation, considered, and the complaint dismissed on the merits as to certain of the defendants and judgment directed in favor of plaintiff against the other defendants.

ACTION by the superintendent of banks to enforce the statutory liability of the stockholders of the Carnegie Trust Company in liquidation.

Carmody, Kellogg & Gormly (Joseph A. Kellogg and Wilbert Ward, of counsel), for plaintiff.

Collin, Wells & Hughes (John L. Wells, of counsel), for Robert W. Bunton, Albert E. Chandler, Ernest L. A. Christianson, Thomas O'Connor, Irving E. French, William L. Laws, John F. Martin, G. Tracey Rogers, Warren L. Samson and John P. Schmitt.

Stanchfield & Levy (John L. Wells, of counsel), for defendant Joseph B. Reichmann.

Fitch & Grant (Grant C. Fox, of counsel), for defendants Frank L. Williams, Jacob Ruppert, Herbert Turrell, Lawrence A. Ramage and Noyes Palmer, as trustee, etc.

Holm, Whitlock & Scarff (Donald C. Strachen, of counsel), for Samuel H. Kress and George C. Leubbers.

Willard A. Mitchell, for Charles M. Schwab.

Masten & Nichols, for defendants Sylvanus Schoonmaker, Agnes M. Laying and James D. Laying, Jr., as executors and trustees under the last will and testament of James D. Laying, deceased.

H. Francis Dyruff, for defendant Edith C. Watson.

O'Gorman, Battle & Vandiver, for defendants Stanton C. Dickinson and John J. Dickinson, executors of the estate of Charles C. Dickinson, deceased.

William F. S. Hart, for Edward F. Hutton, Franklyn Hutton, George A. Ellis, Jr., Edward E. B. Adams, Hosmer J. Barrett, copartners doing business under the firm name of E. F. Hutton & Co.

Barber, Watson & Gibboney (Charles E. McMahon, of counsel), for defendant William J. Hance.

Stephen H. Keating, in person.

Dennis & Buhler, for Philip Ruxton.

Walter F. Peacock, for Pauline Horn Drew.

Bergen & Prendergast, for defendant Sarah P. Kalbfleisch.

Elkus, Gleason & Proskauer (Joseph Proskauer and Wesley S. Sawyer, of counsel), for estate of James Talcott, deceased.

Charles Goldzier, for Julius Alsberg and others.

Rogers & Rogers (Gustavus A. Rogers, of counsel), for defendant Robert L. Smith.

Frank A. Gaynor, for Lucy Lyon Kerr.

**130** RICHARDS *v.* SCHWAB.

Everett, Clark & Benedict (W. F. Allen, of counsel), for defendant Annie N. Alexander, as executrix of the last will and testament of Thomas Alexander, deceased.

McElheny, Bennett & Sicher (William M. Bennett, of counsel), for defendants Thomas J. Hallewell and Robert E. Henry.

George C. De Lacy, for Jefferson Livingston.

Henry S. J. Flynn, for defendants Louis H. Zother, John W. Bohlmann and Helen Gorsch, as executors and trustees under the last will and testament of Hugo Gorsch, deceased.

William B. Walsh, for defendant William A. Lockwood.

Johnson & Mills, for defendant Phipps, as executrix.

Wakelee, Thornall & Weight (C. E. Thornall, of counsel), for defendant Henry A. Bingham.

John W. Collopy, Jr., for defendant Philip J. Josey, Jr.

Ellison & Ellison (Benjamin F. Allen, Jr., of counsel), for defendant John F. Makley.

Elbert B. Hamlin, for Grace Georgette Dickinson, as executrix of the estate of Charles C. Dickinson, deceased.

J. E. R. Carpenter, for Robert B. Knowles.

Cornell, Lockwood & Jeffrey (John L. Lockwood, of counsel), for Fannie E. Stephens.

B. W. B. Brown, for B. R. Robinson.

Baldwin & Hutchins, for Phœnix Insurance Company and Henry B. Spencer.

Enos S. Booth and Vance Hewitt, for defendant Walter G. Jones.

Swan, Moore & Danforth (Joseph R. Swan, of counsel), for Stamford Trust Company.

Leon M. Woodworth, for defendants Irene S. Hunter and Samuel E. Hunter.

Joline, Larkin & Rathbone (Albert J. Stickney, of counsel), for Anson W. Burchard and Frederick H. Cumming.

Clarence M. Lewis, for defendants Seligsberg and Henry.

Herzfeld & Sweedler, for defendant Robert S. Kunkel.

Paul M. Crandell, for defendant Coulter.

M. Steuer, for defendant Frieda Hart.

DONNELLY, J. This is an action brought by the superintendent of banks of New York, pursuant to authority conferred on him by section 19 of the former Banking Law, to enforce the statutory liability of the stockholders of the Carnegie Trust Company in liquidation. On or about the 7th day of January, 1911, the superintendent of banks, pursuant to law, took possession of the assets and liabilities of the Carnegie Trust Company for the purpose of liquidating the same. Afterwards, and on or about the 12th day of November, 1912, he mailed to all the stockholders of record of the Carnegie Trust Company a notice requiring them to pay an assessment to the full amount of the

par value of the stock held by them in said company. This action was commenced on the 6th day of January, 1913, by the delivery of the summons to the sheriff of the county of New York for service and the defendants in the action were served either personally or by publication thereafter. Of nearly 250 defendants served about 120 have appeared and pleaded by some 73 attorneys, setting up various defenses. Most of the questions of law raised by the pleadings have been disposed of by appeals in this and other litigations brought by the superintendent of banks under the same section of the Banking Law. The questions of law presented, in so far as they affect generally all the parties defendant, were formally raised on the trial by motions to dismiss, both at the end of the plaintiff's case and at the end of the entire case. Decision was reserved on both of these motions in order to allow counsel to submit briefs relative thereto. In order to avoid unnecessary repetition I shall first take up *seriatim* the general grounds advanced for the dismissal of the complaint, merely giving citations where specific grounds have been passed upon by the courts in this and other actions, and I shall then take up the special defenses raised by individual defendants which are peculiar to their cases respectively. *General Defenses.*— *First.* That no default has been shown in the payment of any debts or liabilities contracted by the Carnegie Trust Company as of special date, and that as of that date there were existing debts of the corporation, and that such debts amounted to the outstanding capital stock, namely, $1,500,000, or any other sum, in accordance with the provisions of section 196 of the Banking Law upon which this action is based. It appears from the evidence that the superintendent of banks took possession of the assets and property of the Carnegie Trust Company for the

purpose of liquidation, as above stated, on January 7, 1911, and that such possession has been continued by his successors in office for a like period. It further appears that at the time the complaint was drafted and on or about November 29, 1912, the substantial assets of the company amounted to $2,400,000 and the liabilities to $4,502,933.63. It likewise appears from the certificate of the superintendent of banks (exhibit 10) under date of November 13, 1916, that the assets of the Carnegie Trust Company on that date amounted to $454,157.07, and the liabilities to $4,190,141.60, to which must be added interest of $1,540,758.66. This proof, being uncontradicted, is sufficient to establish a *prima facie* case. Banking Law, § 80; *Richards* v. *Scharmann,* 97 Misc. Rep. 143; *Richards* v. *Robin,* 178 App. Div. 535; N. Y. L. J., July 9, 1917. See, also, opinion of Justice Erlanger in the case of *Richards* v. *Robin,* N. Y. L. J., March 27, 1915. *Second.* That this action was not brought in the name of the Carnegie Trust Company according to the provisions of section 19 of the Banking Law in effect at the time this action was commenced and upon which this action is based. This question has likewise been decided adversely to the defendants in the cases *Van Tuyl* v. *Schwab,* 165 App. Div. 412; *Matter of Union Bank,* 204 N. Y. 313, and *Van Tuyl* v. *Scharmann,* 208 id. 53. *Third.* That the Carnegie Trust Company was not organized under the Banking Law of the state of New York, but was organized under a special act of the state legislature, and that therefore section 196 of the Banking Law has no application, and, if it has, it is subject to the limitations prescribed in section 59 of the Stock Corporation Law. It is true that the Carnegie Trust Company was created by special laws (see Laws of 1898, chap. 599; Laws of 1899, chap. 293; and Laws of 1906, chap. 147), but it is provided by

section 7 of chapter 599 of the Laws of 1898 as fol-
lows: "The rights, powers and privileges herein
granted to said corporation shall not be controlled,
limited or restricted by any existing statute or law of
this state; but so far as such statute or statutes of law
are or might otherwise be inconsistent with the pro-
visions of this act or any of them they are and shall
be deemed to be altered and amended so far as they
are or might be applicable to said corporation, so as
to conform to the provisions of this act which pro-
visions shall be in lieu of all provisions in said statutes
relating to the same subject matter. *Except as last
above provided and except upon subjects or matters
relating to which special provision is made in this act,
the said corporation shall be subject to and entitled
to the benefits of all general laws of this state relating
to corporations and applicable to such corporations.*
The amendment of any such general laws shall not be
deemed to be intended to amend any of the express
provisions of this act unless such intention is clearly
expressed in the act or acts making such amendment
of such general laws." It will thus be seen that by the
terms of the special act above quoted the provisions
of the general law so far as they were not inconsistent
with the provisions of the special act were applicable
to this corporation from its inception as provided both
by the special act and by the general law. In numer-
ous cases the courts have applied the provisions of
general laws to the Carnegie Trust Company, and,
while it is claimed that the courts have not specifically
and definitely passed upon this point, it is to be noted
that in the recent case of *Madison Trust Co.* v.
*Carnegie Trust Co.,* 215 N. Y. 483, the court after
reciting the special acts creating the Carnegie Trust
Company proceeded to consider the application of the
general provisions of the Banking Law to this cor-

poration. In regard to the question whether or not the superintendent of banks is subject to the restrictions contained in section 59 of the Stock Corporation Law, the Court of Appeals in the case of *Van Tuyl* v. *Scharmann,* 208 N. Y. 53, definitely held that he was not and that: " The statute of 1908 expressly repealed all acts and parts of acts inconsistent therewith, and in unmistakable language conferred authority upon the superintendent of banks, if necessary to pay the debts and liabilities of a trust company, to institute action in his official capacity to enforce the liability imposed upon the stockholders thereof by section 196 of the Banking Law, *unhampered by any limitations contained in the Stock Corporation Law or the fact that the charter of the company had not been dissolved by judgment of the court.*" *Fourth.* That sections 19 and 196 of the Banking Law are unconstitutional in that they deprive stockholders of their property without due process of law, in that they impair the obligation of the defendants' contract with the Carnegie Trust Company, as stockholders and depositors, and also the contract existing between the Carnegie Trust Company and the state of New York, created by the law and authorizing the incorporation of the Carnegie Trust Company. This ground must also be held to be untenable, as section 7 of article VIII of the Constitution of the state of New York reads: " Liability of stockholders of banks. § 7. The stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind." The same question has been raised by demurrer and decided adversely to the contention of the defendants in the cases of *Van Tuyl* v. *Robin,* 80 Misc. Rep. 362; *Van Tuyl* v. *Kress,* 171

App. Div. 908, 944; *Carnegie Trust Co.* v. *Kress,* 215 N. Y. 706, affg. 167 App. Div. 903, and has also been passed upon by the United States Supreme Court in the case of *State Sav. & Commercial Bank* v. *Anderson,* 238 U. S. 611, affg. 165 Cal. 437. By the latter decision the United States Supreme Court affirmed without opinion the decision of the Supreme Court of the state of California sustaining the action of the superintendent of banks of California in taking possession of the State Savings and Commercial Bank of San Francisco under the California Banking Act, an act which closely follows the Banking Law of this state. *Fifth.* That the defendants have not waived a jury trial by any of the methods prescribed under section 1009 of the Code of Civil Procedure and that they are therefore entitled to a jury trial for the reason, as they allege, that this case is not equitable in its nature and that before it can come into equity there must be some equitable ground, such as equitable parties, or equitable subject-matter or there must be equitable relief demanded. This question likewise has been adjudicated in this department. In this very action a motion was previously made before Mr. Justice Bijur to strike the case from the calendar on the ground that the defendants were entitled to a jury trial. Mr. Justice Bijur denied the motion. An appeal was taken to the Appellate Division by the defendant Kress. That court, in an opinion written by Mr. Justice Page, affirmed the order made by Mr. Justice Bijur. See *Van Tuyl* v. *Kress,* 172 App. Div. 563. *Sixth.* That the plaintiff has not complied with the conditions prescribed by law as precedent to his right to maintain this action, in that he has not collected and liquidated the assets of the Carnegie Trust Company. It seems to be the settled law of the state that the fact that unliquidated assets remain to be

liquidated and applied to debts constitutes no defense to this action. See *Barnes* v. *Arnold,* 23 Misc. Rep. 197; affd., 45 App. Div. 314; 169 N. Y. 611; *Pearsons* v. *Gardner,* 42 App. Div. 490; *Van Tuyl* v. *Scharmann,* 208 N. Y. 53; *Kennedy* v. *Gibson,* 8 Wall. 498. *Seventh.* That the action is barred by the Statute of Limitations. As the record stands there is no merit in this defense *Special Defenses.*—A. That where stockholders paid to the Carnegie Trust Company for their stock an amount in excess of the par value of such stock the liability imposed on such stockholders should be reduced to the extent of such excess payment. The defendants who raise this defense have cited in support thereof no case directly in point. The cases of *Tucker* v. *Gilman,* 121 N. Y. 189; *Rochester & K. F. Land Co.* v. *Raymond,* 158 id. 576; *Briggs* v. *Penniman,* 8 Cow. 386, and *Garrison* v. *Howe,* 17 N. Y. 458, 461, in no way involve the provisions of the Banking Law, fixing the liability of stockholders and directors of banking corporations, but refer to business and manufacturing corporations, and therefore cannot be held to control the construction to be given to the statute in question. The statute fixes the liability of stockholders of a banking corporation, and creditors of such a corporation in this state are entitled to know those who, as shareholders, have pledged their individual credit as security for its debts, engagements and its contracts. They are not obliged to ascertain whether a stockholder has paid to the bank more than the par value of the stock held by him any more than they are required to ascertain whether a stockholder has paid an assessment on his stock after having paid to the bank the par value thereof. It is not a question of contribution between stockholders, where one has contributed money by assessment or otherwise for the purpose of meeting

the claims of creditors, but is simply a question of statutory liability, which is fixed and definite, and upon which creditors doing business with the bank have a right to rely. B. That certain defendants are entitled to set up as a defense or counterclaim debts owed by the Carnegie Trust Company to them, consisting of deposit balances, check collections, etc., or alleged claims for services rendered by them to said company. These defenses were disposed of in the case of *Van Tuyl* v. *Schwab,* 165 App. Div. 412, wherein the court says: '' It is to be noted that the alleged claim of the defendant against the trust company is not pleaded as an equitable set-off. No liability is admitted, and the prayer for judgment is that the complaint be dismissed and a recovery had for the full amount claimed. It is good neither as a defense nor counterclaim. If the defendant has a cause of action it is against the trust company and not the plaintiff. He is merely a custodian and liquidator of the trust company, and an action cannot be maintained against him upon a claim existing against the trust company which he is liquidating. *Lafayette Trust Co.* v. *Higginbotham,* 136 App. Div. 747; *Richardson* v. *Cheney,* 146 id. 686; affd., *sub nom. Richardson* v. *Van Tuyl,* 208 N. Y. 541.'' C. That certain defendants herein should be relieved of liability, notwithstanding the fact that certain shares of stock stand in their names on the books of the Carnegie Trust Company, because they either held such stock as collateral security for money loaned or they acted as agent for a principal in the transaction, or became record owners thereof at the request of their respective employers or through their coercion. In the case of *Van Tuyl* v. *Robin,* 160 App. Div. 41; affd., 211 N. Y. 540, Justice Dowling, writing for the court, says: '' By section 2 of the Banking Law (Cons. Laws, chap.

2; Laws of 1909, chap. 10, as amd. by Laws of 1910, chap. 126) a stockholder is thus defined: ' The term '' stockholder,'' when used in this chapter, shall apply not only to such persons as appear by the books of the corporation to be stockholders, but also to every owner of stock, legal or equitable, although the same may be on such books in the name of another person, but not to a person who may hold the stock as collateral security for the payment of a debt.' * * * We believe, therefore, that the true meaning of section 2 of the Banking Law is to define stockholders as including (1) Every person who appears by the books of the corporation to be a stockholder; *and* (2) Every owner of stock, legal or equitable, though the same may be of record in the name of another, *except* a person who holds stock as collateral for security for the payment of a debt. Thus the first class is without exception; the second has but one exception. The second class is not a limitation of the first, but an addition to it. The respondents herein come within the first class, for they were stockholders of record. The exception, applicable only to the second class, does not apply to or save them harmless from liability. That would only be the case if they were owners of the stock for the purpose indicated, but were not owners of record.'' As the defendants herein are stockholders of record, under the authority above quoted, the plaintiff is entitled to judgment against them for the relief demanded in the complaint.   D. That the liability of a stockholder in a banking corporation under section 196 of the Banking Law is contractual in its nature, and that therefore a discharge in bankruptcy of a stockholder of such a corporation upon a petition filed and an adjudication made after said corporation had become insolvent relieves said stockholder of his obligations and liability as such for the debts of the corporation,

Supreme Court, September, 1917.    [Vol. 101.

because his liability on the date of the filing of the petition in bankruptcy was provable as a debt against his estate. I hold this defense to be good on authority of *Van Tuyl* v. *Schwab,* 174 App. Div. 665; affd., 220 N. Y. 661, and as to those defendants who have availed themselves of it the complaint is dismissed. Upon the stipulation of facts filed by the plaintiff and the defendant Edith C. Watson I find in favor of the plaintiff and against the defendant. The special defense of Annie N. Alexander, as executrix, etc., is predicated on the contention that the order dated March 6, 1914, authorizing the service of the supplemental summons herein by publication, or at the option of the plaintiff, by the service of said supplemental summons and a copy of said supplemental complaint and of said order without the state personally upon the said defendant, is invalid and should be vacated and set aside. This is the second time this identical question has been raised before me. Heretofore a motion was made to vacate and set aside said order of publication while I was sitting in Special Term, Part I. The motion was denied by an order duly entered herein dated June 7, 1914. An appeal was taken therefrom to the Appellate Division, and the Appellate Division affirmed said order without opinion. See *Van Tuyl* v. *Schwab,* 164 App. Div. 933. The decision of the learned Appellate Division is the law of the case so far as this particular question is concerned. I therefore find the special defense of Annie N. Alexander as executrix, etc., to be untenable and find in favor of the plaintiff and against her for the relief demanded in the complaint. Upon the stipulation of facts filed by the plaintiff and the defendant William A. Lockwood, I find that this defendant was neither the legal nor the equitable owner of ninety shares of the capital stock of the Carnegie Trust Company

standing on the books of said company in the name
of the defendant Charles W. Eastman, nor had he
any legal or equitable interest therein at the time the
plaintiff or his predecessor in office took charge of the
affairs of said company, as alleged in the complaint
herein, or at any time subsequent thereto. Said defend-
ant Lockwood is therefore entitled to judgment dis-
missing the complaint on the merits. See *Richards* v.
*Robin,* 175 App. Div. 296. Upon the stipulation of facts
entered into between the plaintiff and the defendant
F. B. H. Paine, I find against the defendant and in
favor of the plaintiff on authority of *Van Tuyl* v.
*Robin,* 160 App. Div. 41, and *Richards* v. *Robin, supra.*
The evidence adduced on the trial by the defendants
Dickinson and Josey raises a nice question under the
authorities. It appears from the evidence that on the
29th day of April, 1910, Charles C. Dickinson, the
defendants' testator, entered into a written agreement
wherein he contracted to sell to John B. Reichmann,
W. J. Cummins, Martin J. Condon and Charles A.
Moore, Jr., president of the Carnegie Trust Company
and directors thereof, respectively, 2,202 shares of the
capital stock of said company, 1,032 shares thereof
representing the said Dickinson's individual interest
and 1,170 shares being owned by his relatives. He
further agreed under said contract to sell to the pur-
chasers above mentioned other shares not exceeding
758 in number, owned by persons thereafter named,
provided said persons, or any of them, desired to sell.
On May 23, 1910, the time set for the execution of this
contract was, by a supplemental agreement in writing,
extended from May 18, 1910, to July 18, 1910. On
May 24, 1910, the said Charles C. Dickinson died.
Letters testamentary were thereafter issued to Stan-
ton C. Dickinson and John J. Dickinson, as executors,
and Grace Georgette Dickinson, as executrix, of his

estate. Prior to July 18, 1910, to wit, on the 20th day of June, 1910, Stanton C. Dickinson, then being one of the executors of the estate of Charles C. Dickinson, deceased, claims he delivered to Joseph B. Reichmann, who was then president of the Carnegie Trust Company, 2,222 shares of the capital stock of said company, representing 2,202 shares belonging to the estate of Charles C. Dickinson, deceased, and the members of the Dickinson family, and 20 shares owned by the defendant Josey and sold under the option clause relative to 758 shares above mentioned, and received in payment therefor, in addition to cash, certain agreements and notes, the payment of each of which was guaranteed by the said purchasers, and that this stock was thereafter taken from the office of the president of the Carnegie Trust Company and deposited in the trust department of said company under " Trust No. 61 " and " Trust No. 1." He further claims that at or about the time of the delivery of said stock, he, the said Stanton C. Dickinson, informed Robert B. Moorhead, secretary of the Carnegie Trust Company, that the stock in question had been sold and delivered to and paid for by Mr. Reichmann and his associates, and had been placed in the trust department of the company, and that he asked the secretary to transfer the stock on the books of the corporation out of the names of Charles C. Dickinson and his relatives and into the names of the purchasers aforesaid. A similar conversation is claimed to have been had by the defendant Josey with Mr. Moorhead with reference to his 20 shares of stock sold under said agreement, and it is further claimed that the secretary assured them that he would attend to the matter as soon as the stock was delivered to him. As a matter of fact, 1,742 shares of said capital stock were transferred on the books of the company out of the names of the Dickinson

owners. It appears, however, that 460 shares belonging to the decedent and 20 shares belonging to the defendant Josey were not so transferred, and the plaintiff seeks to hold these defendants as stockholders to the extent of these 480 shares. The defendants invoke the rule laid down in *Whitney* v. *Butler,* 118 U. S. 655, and *Richards* v. *Robin,* 178 App. Div. 535; N. Y. L. J., July 9, 1917, and claim that, notwithstanding the provisions of the Banking Law, inasmuch as a sale of the stock had taken place and the stock had been actually delivered or came into the possession of the bank, and the sellers had requested the bank to transfer the stock on the books of the corporation, the bank had knowledge of the sale and of the purchasers of the stock and should have transferred the same on its books; that the sellers had done all in their power that could reasonably be expected of them to effect the transfer of record of such stock, and that they should therefore be relieved from liability as stockholders with reference to the shares in dispute. The difficulty, however, in this case is that, even if the cases last cited are applicable, it is doubtful whether the proof establishes the physical delivery to the bank which would enable it to make the transfer if it saw fit to do so. The delivery to Reichmann on June 20, 1910, did not include the 460 Dickinson shares in dispute, and was made to the defendant Reichmann as representative of the syndicate which was purchasing the control of the company, pursuant to the agreement of sale, and was not a delivery to the bank. The deposit of the stock in the trust department was made for safe-keeping, and indicates that something was left to be done before the delivery to the bank was completed. From the entries made under " Trust No. 61 " and " Trust No. 1" of the Carnegie Trust Company, and introduced in evidence by the defendant Dickinson,

**144**   Richards *v.* Schwab.

the following items appear: " 1910. June 29. Union Stock Yards Bank of Buffalo. Capital stock of the Carnegie Trust Co. Cert. 700 n/o C. C. Dickinson — 35 shares. Cert. 472 n/o C. C. Dickinson — 75 shares. Note of C. C. Dickinson for $15,000 due on demand, 6% interest — date March 21st, 1910. Above stock and note deliverable to S. C. Dickinson, executor, estate C. C. Dickinson, upon payment of draft of $15,347.50 on or before July 18, 1910. July 22, 1910. Returned by registered mail to Union Stock Yards Bank of Buffalo." " 1910. July 18. Fifth Ave. Bank. Capital stock of the Carnegie Trust Co. Cert. 1361 n/o C. C. Dickinson — 100 shares. Cert. 1360 n/o C. C. Dickinson — 100 shares. Held in safekeeping. S. K. receipt No. 4 issued. Delivered to 5th Ave. Bank July 27, 1910, upon surrender of receipt." " 1910. July 18. W. H. Wadhams. Capital stock of the Carnegie Trust Co. Cert. 1363 n/o C. C. Dickinson — 50 shares. Cert. 1362 a/o C. C. Dickinson — 100 shares. Held in safekeeping. S. K. receipt No. 5 issued. Delivered July 27, 1910, to M. J. Lyman for W. H. Wadhams, upon surrender of receipt." It thus appears that 460 of the Dickinson shares — the shares in dispute — were not even delivered to Mr. Reichmann at the time the other shares were delivered and at the time Stanton C. Dickinson stated to Secretary Moorhead that he desired to have this stock transferred on the books of the corporation out of the names of Dickinson and his relatives and into the names of the purchasers; that a note had to be paid with reference to 110 shares, and that safekeeping receipts had been given for 200 shares and 150 shares respectively. Likewise, there is no proof that the certificates of stock were duly indorsed in a manner which would authorize the bank to make the transfer. In the case last cited an official of the bank stated as a matter of

fact that the stock had been transferred, and the court held that the defendant in that case was justified in relying upon such statement. But here there was no such representation. The transaction at the time of the notice was not completed. All the secretary of the bank said was that he would transfer the stock when it was delivered to him and it appears from the evidence in the case that instead of being delivered to him the 460 Dickinson shares in question were returned to three different groups of people or corporations, and in view of the decision in *Van Tuyl* v. *Robin,* 160 App. Div. 41, which declares all stockholders of record to be subject to the liability of stockholders, and the decision in *Richards* v. *Robin,* 175 App. Div. 296, which holds that " It is as much the right and duty of the transferror of shares of stock to procure the proper transfer to be made upon the books of the corporation as it is of the transferee," I find in favor of the plaintiff and against the defendants Dickinson and Josey. Judgments directed in accordance with the foregoing, with costs to the successful parties, respectively. Proposed findings passed upon. Submit for my signature, upon eight days' notice of presentation, a complete copy of the decision, which shall embody without change of language all findings made by me at the request of any party, with proof of service on the other side. In order that this may be done the papers have been returned to the custody of the clerk.

Ordered accordingly.